597 P.2d 548

**The STATE of Arizona, Appellee,**

v.

**Richard Henry GRICE, Appellant.**

**No. 2 CA–CR 1474.**

Court of Appeals of Arizona, Division 2.

April 25, 1979.

Rehearing Denied May 30, 1979.

Review Denied June 26, 1979.

**68**

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

Richard S. Oseran, Pima County Public Defender by Michael P. Roca, Asst. Public Defender, Tucson, for appellant.

## OPINION

HOWARD, Judge.

Appellant was convicted by a jury of the second-degree rape of a 15 year-old girl in violation of A.R.S. Sec. 13–611(B). He was adjudged guilty of a felony by the trial judge and placed on three years' probation. Appellant contends he should be granted a new trial because (1) he was deprived of his right to confront and cross-examine the witnesses, (2) the trial court failed to impose sanctions for the state's untimely disclosure of his statements to the police and (3) the conduct of the entire case deprived him of due process of law. He also contends that the judgment should be vacated because the statute under which he was convicted was unconstitutional and because the trial judge sentenced him "in the absence of an adequate understanding of the law". We are unable to agree with any of these contentions and affirm.

The record shows that appellant had picked the victim up at a bus stop on the morning of October 15, 1977 on the pretext of getting her a job in a pornographic movie. He told her he would first have to interview her and see her pose. She was to be paid $150 for the interview and $150 per hour during the making of the movie. Appellant took the girl to his office, had her disrobe, and eventually had sexual intercourse with her. He then took her to the home of a friend and introduced her by her first name. Appellant left and the friend, who subsequently testified at trial, took her home.

When the girl came home she was very excited and told her mother that she was going to be in the movies. She did not tell her mother the nature of the movie or what had occurred at appellant's office, but did tell her the amount of money she was to receive. Her mother immediately became suspicious and thought that some sort of pornography was involved. She contacted the police. Eventually two detectives came to interview the girl who was very upset that her mother had contacted the police. She did not tell her mother what had happened at the office because she knew that her mother would do exactly what she did and because she still believed she was going to get a movie job.

At first the girl would not tell the detectives anything. After they met with her on several occasions she finally told them that she had been forcibly raped by appellant. She did not tell them that she had consented because she did not want anyone to find out how gullible she had been. The detectives interviewed appellant who denied that he knew the girl or had picked anybody up on the day in question.

Appellant's contention that A.R.S. Sec. 13–611(B)[1] was unconstitutional because it denied him equal protection of the law is without merit. *State v. Kelly*, 111 Ariz. 181, 526 P.2d 720 (1974), cert. den., 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411.

On the first day of trial the state made a motion in limine to prevent appellant from making any reference to the victim's sexual conduct prior to the incident in question. In particular, the state did not want appellant to bring out the fact that the night before the rape the victim had slept with her boyfriend. Defense counsel then told the court that the prosecuting attorney had informed him earlier the victim had gonorrhea at the time of the incident and had suggested he tell his client that he might have a venereal disease. The prosecuting attorney did not recall the conversation, but was willing to accept the defense attorney's account of it. However, the prosecutor wanted to check again with the victim before she made any statements to the court concerning the alleged gonorrhea.

Appellant, in response to the trial court's inquiry as to the relevancy of the victim

---

1. This statute is now A.R.S. Sec. 13–1405.

having slept with her boyfriend and the alleged gonorrhea, stated:

"The . . . reason I believe that what happened the night before is relevant and admissible is because it demonstrates a specific motive for lying. Why was it that there was a statutory rape or complaint filed with regard to Richard Grice when there was no complaint filed with regard to the young man she slept with the night before? What's going on here? I think what's going on here is the mother decided that something should be filed because she was upset about her daughter sleeping with this young man the night before. I don't want to question to show Anne is lying. I want to show there is a motive.

\* \* \* \* \* \*

There is a very strange thing going on here between the mother and the daughter, and I think that should get in front of the daughter. There is a motive for Anne telling her story. It is going to come out, and did not report there was any kind of sexual intercourse with the Defendant in this case until approximately one month after October 15th, a little longer, November 19th. Why the day? Why was it the mother reported something on November 19th? [sic]

\* \* \* \* \* \*

Sleeping with the boyfriend, having gonorrhea, allegedly, before she slept with Mr. Grice, indicates there is a motive for lying to her mother. Well, I didn't get gonorrhea from my boyfriend. I was forced to do something and I got it from Mr. Grice. Okay, that is what she tells her mother and that is the motive. . . I am dealing with motive.

\* \* \* \* \* \*

The mother also knew at the time she reported something on October 19th, she knew that her daughter had slept with a young man, the boyfriend, on October 14th or 15th. The mother reported, the daughter doesn't say anything about it

for a month and a half. How this developed between the mother and daughter establishes the specific motive why they are lying about Mr. Grice, not why they lie generally, but why they lied about Mr. Grice."

The trial judge granted the motion in limine as to the victim's relationship with her boyfriend on the preceding night, with the proviso that should it become relevant she would reconsider. She took under advisement the issue of admissibility of any testimony concerning gonorrhea.

On Tuesday, March 21, 1978, after a three-day recess, the trial was to begin with opening statements to the jury. Prior to the summoning of the jury, defense counsel informed the court that at 1:00 p. m. the previous day the prosecuting attorney had informed him that she had a written medical report relating to the victim's alleged "venereal disease". Records marked for identification showed the victim had "venereal warts" and set forth the medication prescribed by the doctor. The defense attorney requested a continuance so he could determine what "venereal warts" were. The trial court denied the motion because defense counsel had been put on notice sometime before that there was a question concerning a venereal disease and had made no effort to ascertain the existence of medical records and subpoena them. The court also pointed out that defense counsel still had ample time to consult with the doctor as to the meaning of the report.

The trial court then told defense counsel that if it could be determined that the girl had a communicable venereal disease on the day of the rape and that appellant, within the necessary time for the disease to manifest itself, thereafter did not contract the disease, the court would allow such evidence. The record discloses that at no time during or after the trial did defense counsel present anything to the court to show that "venereal warts" was a communicable venereal disease.[2]

---

2. Stedman's Medical Dictionary 277 (3rd Unabridged Lawyers' Edition 1972) defines a vene-

real wart, condyloma acuminatum, as "a projecting warty growth on the external genitals

Appellant first contends that the trial court's ruling regarding the evidence of the victim's "venereal malady" deprived him of his constitutional right of confrontation under the Sixth and Fourteenth Amendments to the United States Constitution and also deprived him of due process of law under the Fifth and Fourteenth Amendments to the United States Constitution. His argument is directed to the ruling on the motion in limine and the denial of a continuance when the state produced the doctor's report.

Appellant claims that the evidence of what he now terms a venereal "malady" was relevant to show motive. The scenario which he urged at trial, and he now urges, goes like this. The victim had contracted a venereal disease from her boyfriend. In order to prevent her monther from discovering that she had been having sexual intercourse with her boyfriend, she concocted the story of the rape. Thus, when her mother found out about the venereal disease, she could say that she got it from appellant and her mother would be none the wiser.

In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) the Court discussed the confrontation clause of the Sixth Amendment and held that it gives the defendant more than just a mere right to face the witnesses against him. It also gives him the right to cross-examine the witnesses subject to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation. The Court further stated that exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. However, *Davis v. Alaska*, supra, does not stand for the proposition that the Sixth Amendment entitles a defendant to present irrelevant evidence.

Recognizing the damage that can be done by introducing evidence of previous unchastity in a rape case, the Court in *State ex rel. Pope v. Superior Court*, 113 Ariz. 22, 545 P.2d 946 (1976) set forth the procedure to be used when a defendant wishes to offer evidence of unchastity to impeach the prosecutrix. Although in *Pope* the evidence of unchastity was offered to show character or reputation, the *Pope* procedure also applies when the evidence of unchastity is offered for impeachment on other grounds.

■ *Pope* requires the defendant first to make a written motion or offer of proof on the record outside the presence of the jury. The motion or offer should include the matters sought to be proved either by cross-examination of the complaining witness or by testimony of other witnesses. If the court finds that the proposed testimony is sufficient, it then conducts a hearing outside the presence of the jury and allows the witnesses to be questioned to determine whether the evidence is as defendant claims. If the court finds that the proffered evidence is relevant, credible and within one of the exceptions set forth in *Pope*, it should allow its admission.[3]

■ Had appellant complied with *Pope*, and had the scenario unfolded as he claimed, the evidence would have been admissible under *Davis v. Alaska*, supra. But appellant never made an offer of proof, there was no *Pope* hearing, and there was no showing that the mother did not know that her daughter had previously engaged in sexual intercourse with her boyfriend. Cf. *People v. Crawford*, 253 Cal.App.2d 524, 61 Cal.Rptr. 472 (1967), cert. den. 390 U.S. 1006, 88 S.Ct. 1254, 20 L.Ed.2d 108.[4] From all that appears in the record, the plot conceived by appellant existed only in the mind of his counsel.

. . . consisting of fibrous overgrowths covered by thickened epithelium, possibly due to viral infection. It is benign and responds to treatment with podophyllin. . . . " There is no indication in the foregoing reference that this type of venereal wart is communicable.

3. The procedure set forth in *Pope* appears to be a version of Cal.Evid.Code Sec. 782.

4. On the issue of right to cross-examine the prosecuting witness as to motive, see Annot., 62 A.L.R.2d 610 (1958) and *State v. Holden*, 88 Ariz. 43, 352 P.2d 705 (1960).

■ Appellant also contends that the refusal to grant him a continuance when the prosecuting attorney brought the doctor's records into court denied him due process. We do not agree. First of all, reference to a medical dictionary would have informed defense counsel that venereal warts are related to sexual intercourse.[5] Whether they are a communicable disease was not relevant either to appellant's theory of the victim's motive or to any offer of proof or hearing under *Pope*.

As for the theory suggested by the court, which it was willing to consider and allow into evidence, to-wit, the communicability of the "disease", appellant has not shown that a continuance was necessary or that the failure to grant it was prejudicial. See *State v. Ramirez*, 116 Ariz. 259, 569 P.2d 201 (1977). The trial court gave counsel ample time during the trial to secure or consult with a doctor. At no time, either during the trial or at post-trial motions, has appellant shown that venereal warts are communicable.

■ Appellant also contends the trial court erred when it failed to grant a continuance on March 17, 1978 when counsel first learned of the existence of a police report prepared on March 16, 1978. This was a supplemental report made by the detectives, relating to their interview with appellant. Since the presentation of testimony did not commence until March 21st, we are unable to find any prejudice to appellant. He only wanted a day's delay and that was achieved by the fact that the trial did not commence until March 21st.

In a shotgun attack appellant contends that an accumulation of conduct on the part of the trial court deprived him of due process of law. We have reviewed the record and find either no prejudicial error or that any error was waived by failure to object.

■ After the trial court found appellant guilty of second-degree rape, as the offense was open-ended, it designated it as a felony and suspended imposition of sentence, placing appellant on probation for three years.

Appellant then asked the court to defer designating the offense as a felony until he completed his probationary period. The court stated that it did not think it could do so if the probation was longer than two years. It then remarked that it had heard the evidence and was more inclined to treat it as a felony, stating:

> "I am going to make the finding now that I am treating it as a felony, but I do think I have the option of setting that aside."

Appellant again asked the trial court to reconsider the designation and the court gave him three days to file a memorandum on the trial court's authority to place the appellant on probation for three years or more without first finding him guilty of a felony. The court stated that it would then consider amending the judgment.

Appellant filed the memorandum citing *State v. Risher*, 117 Ariz. 587, 574 P.2d 453 (1978) in support of his position. The trial court never amended the judgment.

Appellant contends the sentence reflects a misunderstanding of *Risher* and that we should remand the case for resentencing. The state contends *Risher* would allow the trial court in this case to designate the offense as a misdemeanor at the end of the three-years' probation in spite of the fact that the court initially designated it as a felony.

We do not believe appellant was prejudiced by the judgment. In *Risher* the court stated that an open-end offense is deemed a felony unless and until otherwise designated. It further held that the trial court could place the defendant on probation for a longer period of time than the maximum sentence for a misdemeanor and later designate the offense a misdemeanor upon the successful completion of probation.

The trial court added nothing when it designated the offense a felony because it was a felony as a matter of law. Therefore, under *Risher*, it can still designate this

---

5. See Stedman's Medical Dictionary 1382.

offense a misdemeanor upon successful completion of probation.

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.