599 P.2d 835

**The STATE of Arizona, Appellee,**

v.

**Joseph Earl HOLLEY, Appellant.**

**No. 2 CA–CR 1468.**

Court of Appeals of Arizona,
Division 2.

May 23, 1979.

Rehearing Denied July 3, 1979.

Review Denied July 19, 1979.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Richard S. Oseran, Pima County Public Defender by Donald H. Bayles, Jr., Asst. Public Defender, Tucson, for appellant.

## OPINION

HOWARD, Judge.

Appellant was convicted by a jury of two counts each of kidnapping for rape, assault with a deadly weapon, lewd and lascivious acts, armed rape, and one count of attempted armed rape. He was sentenced to concurrent terms in the Arizona State Prison ranging from one to three years on the lewd and lascivious counts and from 20 to 20 years and one day on the kidnapping for rape convictions.

He contends the trial court erred in (1) refusing the admission of evidence of the victims' reputations for chastity; (2) admitting statements he made to the police; (3) refusing to provide him with a more definite statement of the charges; (4) denying his motion for a mistrial based upon prosecutorial misconduct and (5) sentencing him to double punishment. We affirm.

On the evening of November 7, 1977, Kathy, 18, and Carol, 19, went to the Greyhound Bus Terminal in Tucson to purchase a ticket to California for Kathy. Kathy and Carol had previously worked in a carnival together. At the bus depot, Kathy and Carol met appellant, appellant's male companion known as "Gypsy" and a third male. Appellant told the women that he had worked in a carnival and, after striking up a conversation, they all went downtown where the men bought the women dinner.

Appellant and Gypsy needed a place to spend the night and the women suggested the Romney Motel, near the location of the Capel Brothers Carnival at Southgate Shopping Plaza. After appellant and Gypsy secured a room, the victims joined them watching television and Carol, Gypsy and appellant began to drink tequila. Later, appellant took a shower. He told the women he wanted one of them to shower with him, but they declined. While appellant was in the bathroom they went across the street to the carnival. They all then returned to the motel room. Appellant started calling Carol and Kathy "teases", told them that he would have to teach them a lesson and pulled out a knife. Gypsy tried to get appellant to go out with him to get a snack and finally left after stating that he was not going to get involved. After demanding that the girls take off their clothes, appellant raped Kathy twice, at knife point, and attempted to rape Carol. Other acts took place in the room with the girls continually screaming and with appellant at times striking them. A couple in the room next door heard the disturbance and corroborated the testimony of the girls that they had been beaten and that Kathy was raped at knife point. At one point the male member of the couple next door came to appellant's room, knocked on the door and asked appellant to quiet down. Appellant followed him back to his room and threatened him with a bottle, but appellant was persuaded to return to his own room after the witness pointed a gun at him.

At midnight an anonymous call reported a disturbance in the motel to the police. The police arrived and appellant opened the door. Kathy and Carol ran out of the room and Kathy gestured to Officer Fowler to come to her and she spoke to him. The police later found a knife in appellant's room and he was arrested. The girls at first did not tell the officers of the rape and told them they did not want to press charges. Subsequently, upon the urging of

the female member of the couple next door, the girls told the police what had happened.

At trial the court refused to allow the owner of the carnival, Mr. Goldstein, to testify that the reputation of the girls for chastity was bad and that they were kicked out of the carnival and not allowed back on the carnival grounds because of their prior bad acts. At an offer of proof, Mr. Goldstein testified that the girls were disruptive because they slept with all the boys in the carnival and thus caused the boys to be late for work. He also testified that a single girl was allowed to travel with the carnival as long as she had a boyfriend. The trial court also refused to allow the victims to be cross-examined as to their previous acts of unchastity and the reason they were banned from the carnival grounds.

■ In *State v. Grice,* 123 Ariz. 66, 597 P.2d 548 (1979) we stated that prior evidence of unchastity in a rape case is admissible as an exception to the rule in *State ex rel. Pope v. Superior Court,* 113 Ariz. 22, 545 P.2d 946 (1976) when it shows a motive to testify falsely.[1] We also indicated in *Grice* that in order to admit the evidence on the basis that it shows a motive to testify falsely, there must be a factual predicate in the evidence from which this motive can be inferred. To hold otherwise would make this exception to the rule limited only by defense counsel's imagination. The theory of appellant's counsel on the issue of motive here was that the girls had consensual sex with a "carnie" but the event was about to be investigated by the police because of noise surrounding the incident. By claiming rape, the girls were attempting to show that they were reliable persons who would perform carnival work without diverting the attention of fellow employees. We do not believe the record supports this inference. There was no testimony that Kathy and Carol were interested in seeking re-employment with the Capel Brothers Carnival. In fact, Kathy was leaving for California

1. See *Rozell v. Estelle,* 554 F.2d 229 (5th Cir. 1977), cert. den. 434 U.S. 942, 98 S.Ct. 437, 54 L.Ed.2d 303 where the court held that the Sixth Amendment right to confrontation was not vio-

lated by a state rule prohibiting the admission into evidence of specific acts of unchastity. In *Rozell* it does not appear the evidence was offered to show motive to lie.

the next day by bus. There was no testimony that Goldstein would have inevitably learned of the alleged consensual sex between the girls and the appellant. Neither Gypsy nor the appellant were employees, prospective employees, friends or prospective friends of Goldstein. If the girls did not want Mr. Goldstein to find out that they had been having sex by consent, then there was no reason to tell the police anything. The contention of appellant's defense counsel that they told the police they had been raped in order to enhance their reputation so they could be rehired by Goldstein does not even make sense. The trial court did not abuse its discretion in refusing to allow Goldstein to testify as to the girls' reputation as to chastity and did not err in refusing to allow the defense to cross-examine the girls as to their previous sexual conduct.

■ Appellant also contends that the reputation of the girls for unchastity was admissible as an exception to *Pope* since their past conduct showed an emotional propensity to engage in deviant sexual practices. We are not able to agree that previous heterosexual relations is a sexual "deviancy" even if the past conduct was promiscuous.

■ Appellant contends the trial court erred in not providing him with a more definite statement by which he could determine whether the charges were based upon acts which occurred outside of the motel room, the exact nature of the lewd and lascivious acts, and whether the assault charges were based upon acts separate and apart from the acts relied upon in the armed rape and attempted armed rape charges. The state opposed the motion on the ground that the pretrial disclosure materials furnished to appellant, which included the victims' statements, provided appellant with sufficient information to prepare a defense. Also, at the omnibus hearing, held prior to the hearing on the motion for a more definite statement, the state informed appellant that the variety of kidnapping was going to prove kidnapping by confinement. The trial court refused to grant a more definite statement. Appellant contends this refusal requires reversal. We do not agree.

We believe the information supplied was adequate. Appellant's defense was consent and a denial that any criminal acts took place in the motel room. Assuming arguendo that the court erred in not granting a more definite statement, appellant has failed to show us how he was prejudiced thereby.

■ During the trial defense counsel attempted to prove that the prosecutor had poisoned the minds of the witnesses who were in the adjacent motel room by calling appellant a name. The male witness did not recall such an occasion. On recross, without objection, the male witness was asked if he remembered the prosecutor calling appellant an "animal". The witness recalled that the prosecutor used the word "pig". The record also shows that Kathy testified that when appellant was raping her, he made a grunting noise like some kind of animal.

In his summation the prosecutor stated:

"I apologize if it's upset you that I have expressed up in my office, away from the presence of you, how I feel about this particular defendant. But I think you'll agree with me that if you find that defendant guilty beyond a reasonable doubt of all these things that you'll agree that he's an animal and that nobody but an animal would have done what he did on that particular evening."

Appellant contends that the remarks by the prosecutor constituted an impermissible personal opinion as to appellant's guilt and called for a mistrial. We do not agree. It is obvious that the testimony elicited on recross was exactly what appellant sought to introduce into evidence. Furthermore, he did not object to its submission. He cannot now complain about the fact that the prosecutor's personal opinion was introduced into evidence. We believe that in the cited portion of the summation, the prosecutor made it clear to the jury that his opinion did not govern their decision and

that they were to determine appellant's guilt based upon the facts and the standard of reasonable doubt. The trial court did not err in refusing to grant a mistrial.

Appellant contends he was subjected to double punishment in violation of A.R.S. Sec. 13–1641 when he was convicted of both armed rape and assault with a deadly weapon upon Kathy and both attempted armed rape and assault with a deadly weapon upon Carol.

■■ A.R.S. Sec. 13–1641 prohibits double punishment where a single act violates more than one statute. *State v. Mitchell*, 106 Ariz. 492, 478 P.2d 517 (1970). The test is to apply the facts of the case to the elements of one charge and then determine whether there are sufficient facts remaining to support the elements of a second charge. *State v. Arnold*, 115 Ariz. 421, 565 P.2d 1282 (1977). Where there are *separate* acts which support the elements of different crimes, there is no violation of A.R.S. Sec. 13–1641. *State v. Arnold*, supra. In this case there were separate acts which appellant chooses to ignore in his argument. The evidence shows that before he raped Kathy he waved the knife at both girls and told them to take off their clothes or else he would cut them off. This constituted assault with a deadly weapon against both of the girls. He then held a knife against Kathy's throat and told her to take off her clothes. She did so and he raped her. After he raped Kathy the first time, he then went, knife in hand, to Carol in an attempt to get her to submit. This constituted an attempted armed rape of Carol. The acts were separate and there was no double punishment.

The police came to appellant's motel room in response to a report that there was a "fight brewing". After the police knocked several times appellant answered the door attired only in his pants. Almost immediately the girls exited. Kathy gestured to Officer Fowler that she wanted to speak with him and he went downstairs to talk to them. Officers Perez, Lewis and Smith remained at the room. The girls told Officer Fowler that they had been kept in the room against their will and that there was a knife involved.

Back at the room, appellant was asked if he had been involved in a fight. Appellant told the officers that the only fight that occurred was with the neighbor next door. He told them that the neighbor attacked him with a gun. The officers let the appellant go back into his room and they went to talk to the neighbor next door. After talking to the neighbor they went back to appellant's room and knocked on the door. By that time Fowler had returned. The officers asked appellant if he had a knife with him. They asked him if they could check the room for the knife and appellant replied, "Sure. Knock yourselves out." Officers Hughes and Fowler entered the room and after searching found a knife under the bed. Officer Perez testified that as he was getting out his rights card to read appellant his rights, appellant volunteered the statement, "A guy's got to protect himself."

At the trial appellant testified, on cross-examination, that he was not asked whether there was a knife in the room, but whether he had a knife on him and that he replied "No."

■ *Miranda* warnings become a requirement only when a defendant is in custody or otherwise deprived of his freedom of action in any significant way. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966). *Miranda* did not intend to abolish the accepted police practice of making general on-the-scene inquiries of citizens to determine whether a crime has been committed or is in progress. *Lowe v. United States*, 407 F.2d 1391 (9th Cir. 1969). See also *State v. Bainch*, 109 Ariz. 77, 505 P.2d 248 (1973); Annot., 31 A.L.R.3d 565, Sec. 3 (1970). We believe that the facts here show that appellant was neither in custody nor was his freedom of movement deprived in any significant manner and the question of the officers constituted general on-the-scene questioning, not custodial interrogation requiring *Miranda* warnings. The officers had been to appellant's room earlier and left, allowing him to close the door. They did not have their

weapons drawn. The questioning took place in appellant's temporary place of abode and was brief. Appellant did not testify at the motion to suppress and, although he did testify at trial, he never stated that he felt under any compulsion to answer or felt that he was deprived of his freedom of movement in any way.

As for appellant's statement, "A guy's got to protect himself," Officer Perez testified that this statement was spontaneous and not in response to any police questioning. It is therefore admissible. *State v. Landrum*, 112 Ariz. 555, 544 P.2d 664 (1976).

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.