760 P.2d 1071

**STATE of Arizona, Appellee,**

v.

**Joseph Land OLIVER and David Edward Cordone, Appellants.**

**Nos. CR–87–0060–PR, CR–87–0130–PR.**

Supreme Court of Arizona, En Banc.

Aug. 4, 1988.

---

Dardis & Hippert, P.C. by Frederic J. Dardis, Harold Higgins, Pima County Public Defender, Wayne E. Yehling, Deputy Pima County Public Defender, Tucson, for appellant Oliver.

Baker Sipe and Campoy by Barry J. Baker Sipe, Tucson, for appellant Cordone.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Criminal Div., Diane M. Ramsey, Asst. Atty. Gen., Crane

McClennen, Asst. Chief Counsel, Phoenix, for appellee.

GORDON, Chief Justice.

We have consolidated the appeals of Joseph L. Oliver and David E. Cordone (Appellants). Both men have been convicted of molestation of a child in violation of A.R.S. §§ 13–1410, 13–701, 13–702, 13–801, and 13–803. In unpublished memorandum decisions, the court of appeals confirmed the convictions of both Oliver and Cordone.

We granted review to consider whether Appellants should receive new trials because they were precluded from introducing evidence of the victims' prior sexual experiences with persons other than the Appellants. Appellants sought introduction of this evidence to dispel any inference that the victims' ability to vividly and accurately describe the alleged sexual molestations could result only from experiences with the Appellants.

## FACTS

Although we ultimately dispose of this case largely on what transpired during the respective trials, we believe that a brief review of the underlying facts is informative. The facts of each case are presented separately, beginning with the Oliver matter.

*Oliver.* At approximately 5:00 p.m. on March 4, 1985, Oliver's nine-year-old daughter, Jackie, told their next-door neighbor that Oliver had touched Jackie's vagina, and that she wanted to use the telephone to call the police. The City of Tucson Police Department dispatched Officer Brenda Woolridge to the neighbor's apartment. Jackie told Woolridge that, the previous night, Oliver had asked Jackie and her brother to sleep in Oliver's bed. Sometime during the night, Jackie stated she awoke to find Oliver on top of her with his hands on her "private parts." Jackie said that when she tried to scream, Oliver covered her mouth and told her to go to sleep. The next morning, Jackie claimed that Oli-

ver made her shower because he wanted her to wash off the "white stuff from sex." Woolridge then served Oliver with temporary custody orders and removed Jackie and her brother, James, from Oliver's custody.

At trial, Oliver's counsel announced his intention to question Jackie with respect to her prior sexual history. Oliver's theory was that Jackie had been the victim of prior sexual abuse, and on the basis of her experience she was able to fabricate the charges against him. The State moved to suppress this evidence.

Pursuant to *State ex rel. Pope v. Superior Court*, 113 Ariz. 22, 545 P.2d 946 (1976), and *State v. Lindsey*, 149 Ariz. 493, 720 P.2d 94 (App.1985), *aff'd in part, vacated in part*, 149 Ariz. 472, 720 P.2d 73 (1986), the trial court refused to admit evidence of Jackie's prior sexual history. To enable Oliver to buttress his theory of fabrication, though, the trial court permitted the introduction of evidence that Jackie had independent knowledge of seminal fluids and ejaculation from experiences with someone other than Oliver.

*Cordone.* The State charged Cordone with eight counts of child molestation involving two boys under the age of 15, John and Jeremy.[1] At trial, John testified that Cordone performed fellatio on him on three separate occasions, including July 4, 1981, when Cordone performed oral sex on both John and Jeremy. Jeremy confirmed the July 4, 1981 incident, and he also testified that Cordone performed fellatio on him on several occasions.

Cordone wanted to cross-examine Jeremy and John concerning their prior sexual histories. In addition to maintaining that such evidence would support his fabrication defense, Cordone also argued that the evidence shed light on the victims' credibility, indicated that John had a tendency to exaggerate, and established that the victims had a motive for falsely accusing him. The State moved *in limine* to exclude any evi-

---

**1.** Although John was 16 years old and Jeremy was 15 years old when they testified at Cordone's trial, the victims were only 11 and 10 years old, respectively, when Cordone initially molested them.

dence of the victims' prior sexual histories. The trial court granted the State's motion over Cordone's objection.

## DECISION OF THE COURT OF APPEALS

*Oliver.* The court of appeals found that Oliver's *in camera* offer of proof of the alleged prior molestations of Jackie was insufficient, and, accordingly, the court found that, under *Pope*, the trial court properly excluded evidence of Jackie's prior sexual history. Moreover, the court held that the trial court's decision to permit evidence of Jackie's prior knowledge of semen, from experiences with someone other than Oliver, allowed him to sufficiently present his fabrication defense.

*Cordone.* Relying on *Pope*, the court of appeals found no error in the trial court's decision to limit cross-examination of the victims concerning sexual activities unrelated to the conduct in issue. Noting that in the absence of a showing of abuse of discretion it would not substitute its judgment for the trial court's, the court of appeals found no abuse of discretion because it believed the evidence of John and Jeremy's prior sexual experiences had little relevance and was extremely prejudicial.

The threshold issue in these consolidated cases is whether the *Pope* "rape shield" should apply in child molestation cases. If we find that *Pope* is applicable in such cases, a subsidiary issue is whether there should be an exception in those child molestation cases in which defendants attempt to bolster fabrication defenses by offering evidence of minor victims' prior sexual histories to rebut the inference that the only reason minor victims are able to graphically describe alleged sexual molestations is because the defendants did, in fact, molest the victims.

## DOES ARIZONA'S RAPE SHIELD CASE LAW EXTEND TO CHILD MOLESTATION CASES?

In deciding whether to grant new trials to Oliver and Cordone, we must first determine whether the "rape shield" rule announced in *Pope*, 113 Ariz. at 29, 545

P.2d at 953, extends to child molestation cases.

Prior to this court's ruling in *Pope*, evidence concerning the prior sexual history of a victim was admissible where the accused raised consent as a defense in a prosecution for forcible rape. *See State v. Kelley,* 110 Ariz. 196, 516 P.2d 569 (1973); *State v. Martinez,* 67 Ariz. 389, 198 P.2d 115 (1948); *State v. Wood,* 59 Ariz. 48, 122 P.2d 416 (1942). Arizona courts tolerated the introduction of such evidence under the misguided assumption that "common experience teaches us that the woman who has once departed from the paths of virtue is far more apt to consent to another lapse than is the one who has never stepped aside from that path." *Wood,* 59 Ariz. at 52, 122 P.2d at 418. In *Pope,* however, we held that evidence of the victim's prior sexual history with men other than the accused is inadmissible on the issue of consent. *Pope,* 113 Ariz. at 28, 545 P.2d at 952. In reaching this conclusion, we noted that the fact that a victim consented to sexual intercourse on one occasion is not substantial evidence that she consented on another, and that such evidence diverts the jury's attention from the real matter in issue. *Id.* Moreover, we concluded that victims should not be expected to come prepared to defend every incident of their pasts. *Id.* Finally, because such activity has no relevance to a witness's truth or veracity, we held that a victim's credibility cannot be impeached by evidence of prior sexual activities. *Id.* at 29, 545 P.2d at 953.

A number of other jurisdictions have extended their rape shield laws to cases involving child molestation victims. *State v. Rossignol,* 490 A.2d 673 (Me.1985); *Commonwealth v. Baldwin,* 502 A.2d 253 (Pa. Super.Ct.1985), *disapproved on other grounds, Commonwealth v. Davis,* 541 A.2d 315 (Pa.1988); *State v. Freeman,* 447 So.2d 600 (La.Ct.App.1984); *Fields v. State,* 281 Ark. 43, 661 S.W.2d 359 (1983); *State v. Peyatt,* 315 S.E.2d 574 (W.Va. 1983); *Lewis v. State,* 451 N.E.2d 50 (Ind. 1983); *People v. Arenda,* 416 Mich. 1, 330 N.W.2d 814 (1982); *State v. Padilla,* 110 Wis.2d 414, 329 N.W.2d 263 (App.1982);

*State v. Howard,* 121 N.H. 53, 426 A.2d 457 (1981). In fact, the Arizona Court of Appeals has applied *Pope* to a case involving a minor victimized by sex crimes. *State v. Lindsey,* 149 Ariz. 493, 497–98, 720 P.2d 94, 98–99 (App.1985), *aff'd in part, vacated in part on other grounds,* 149 Ariz. 472, 720 P.2d 73 (1986). In *Lindsey,* the court cited *Pope* to support its holding that, absent evidence that the victim had intercourse with anyone except the defendant during the time of conception, it was proper to preclude evidence that the victim allegedly had intercourse with others several weeks or months after her pregnancy, or long before. *Id.* at 498, 720 P.2d at 99.

Two of the policies underpinning *Pope* —that requiring sex crime victims to defend every incident in their pasts will discourage prosecution and that the introduction of sexual histories might confuse the jury—are just as valid in a child molestation case as in a rape prosecution. In fact, child molestation victims may be even more adversely affected by unwarranted and unreasonable inquiry into largely collateral and irrelevant evidence than victims in rape cases. *People v. Arenda,* 416 Mich. 1, 13, 330 N.W.2d 814, 818 (1982). Accordingly, we now extend Arizona's rape shield to child molestation cases.

## IS THERE AN EXCEPTION TO ARIZONA'S RAPE SHIELD WHEN FABRICATION IS RAISED AS A DEFENSE IN A CHILD MOLESTATION CASE?

Because they were not offering the precluded evidence to place the victims' moral virtue on trial, but merely to demonstrate to the jury that it was possible for the victims to have the knowledge of sexual matters necessary to fabricate a molestation charge, both Oliver and Cordone argue that *Pope* does not apply to their cases. Appellants assert that such evidence is necessary to counter the inference that if minor victims speak in detail about sexual conduct it is likely that they acquired their knowledge during the alleged sexual assault. Appellants maintain that *Pope* cannot be construed to preclude highly probative and necessary evidence of a victim's prior sexual history when such evidence is introduced for purposes other than to impugn or cast doubt on a victim's moral character.

In *Pope,* we recognized that there are certain limited situations where evidence of a victim's prior sexual history should be admitted because it has sufficient probative value to outweigh its inflammatory effect. *Pope,* 113 Ariz. at 29, 545 P.2d at 953. In fact, we enumerated several of these exceptions, including "evidence of prior consensual sexual intercourse with the defendant or testimony which directly refutes physical or scientific evidence, such as the [victim's] alleged loss of virginity, the origin of semen, disease or pregnancy." *Id.* Moreover, we envisioned other exceptions to the general rule, for instance, where a defendant alleges the victim actually consented to an act of prostitution, or in conjunction with an effort by the defense to show that the victim had made unsubstantiated charges of rape in the past. *Id.*

Arizona courts have implicitly held that *Pope*'s list of exceptions is not exhaustive. *State v. Grice,* 123 Ariz. 66, 70, 597 P.2d 548, 552 (App.1979) (had procedure in *Pope* been followed, evidence of a victim's prior sexual history would have been admissible to prove motive to testify falsely); *State v. Holley,* 123 Ariz. 382, 384, 599 P.2d 835, 837 (App.), *cert. denied,* 444 U.S. 970, 100 S.Ct. 464, 62 L.Ed.2d 386 (1979). Before deciding whether to carve out another exception to Arizona's rape shield, we note that we reached our decision in *Pope* prior to the September 1, 1977, promulgation of the Arizona Rules of Evidence.

Under Rules 402 and 403, in the absence of a constitutional provision or a specific statute or rule to the contrary, all relevant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay. Ariz.R. Evid., 17A A.R.S. (Supp.1987); *State v. Hensley,* 142 Ariz. 598, 691 P.2d 689 (1984); *State v. Jeffers,* 135 Ariz. 404, 661 P.2d 1105, *cert. denied,* 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983); *Fridena v.*

*Evans,* 127 Ariz. 516, 622 P.2d 463 (1980). Before reaching Rule 403, though, it is necessary to analyze the proffered evidence under Rule 401 to ascertain whether it is relevant. *State v. Fisher,* 141 Ariz. 227, 245, 686 P.2d 750, 768, *cert. denied,* 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984). If evidence has no probative value, it is inadmissible under Rule 401, without even reaching Rule 403.[2] *State v. Meraz,* 152 Ariz. 588, 590–91, 734 P.2d 73, 75–76 (1987) (Feldman, V.C.J., concurring); *Banks v. Crowner,* 694 P.2d 101 (Wyo. 1985).

 For Rule 401 purposes, evidence is relevant if it has any tendency to make the existence of any fact that is of consequence more or less probable than it would be without the evidence. *State v. Adamson,* 136 Ariz. 250, 259, 665 P.2d 972, 981, *cert. denied,* 464 U.S. 865, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983); *State v. Moss,* 119 Ariz. 4, 5, 579 P.2d 42, 43 (1978). This standard of relevance is not particularly high. *See, e.g., United States v. Southland Corp.,* 760 F.2d 1366, 1375 (2nd Cir.), *cert. denied,* 474 U.S. 825, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985); *Carter v. Hewitt,* 617 F.2d 961, 966 (3rd Cir.1980). We believe that if an accused raises the defense of fabrication, and if the minor victim is of such tender years that a jury might infer that the only way the victim could testify in detail about the alleged molestation is because the defendant had in fact sexually abused the victim, then evidence of the victim's prior sexual history is relevant to rebut such an inference. *Commonwealth v. Ruffen,* 399 Mass. 811, 507 N.E.2d 684 (1987); *State v. Carver,* 37 Wash.App. 122, 678 P.2d 842 (1984). Exclusion of this evidence would unfairly curtail a defendant's ability to present a logical explanation for a victim's testimony. *Ruffen,* 399 Mass. at 815, 507 N.E.2d at 687–88; *Carver,* 37 Wash.App. at 125, 678 P.2d at 844.

Because we find that evidence of a minor victim's prior sexual history is relevant in this limited circumstance, we must discuss generally the Rule 403 balancing courts undertake to determine whether the probative value of such evidence is outweighed by its capacity for unfair prejudice. *Pope,* 113 Ariz. at 29, 545 P.2d at 953; Rule 403, Ariz.R.Evid., 17A A.R.S. (Supp.1987).

Other jurisdictions have found evidence of a minor victim's prior sexual history relevant to rebut the inference that the victim would not know about such sexual acts unless the defendant had sexually abused the victim. *Ruffen,* 399 Mass. at 815, 507 N.E.2d at 687–88; *Carver,* 37 Wash.App. at 125, 678 P.2d at 844 (1984); *State v. Padilla,* 110 Wis.2d 414, 329 N.W. 2d 263 (App.1982). Before admitting such evidence, though, some courts employ a two-pronged analysis to determine whether the evidence's probative value is outweighed by the danger of unfair prejudice. Under the first prong, the defendant must show, *in camera,* that the victim previously had been exposed to a sexual act. *Ruffen,* 399 Mass. at 815, 507 N.E.2d at 687; *Padilla,* 110 Wis.2d at 429, 329 N.W.2d at 271. Under the second prong, the defendant must establish that the prior sexual act was sufficiently similar to the present sexual act to give the victim the experience and ability to contrive or imagine the molestation charge. *Ruffen,* 399 Mass. at 815, 507 N.E.2d at 687; *Padilla,* 110 Wis. 2d at 430, 329 N.W.2d at 271; *see also State v. Howard,* 121 N.H. 53, 426 A.2d 457 (1981).

 We believe that this two-pronged approach has merit, and we encourage Arizona courts to utilize this analysis when determining whether to admit evidence of a young child's prior sexual history.[3] Accordingly, if, in the discretion of the trial

---

**2.** Some courts have excluded evidence, not necessarily precluded by rape shield laws, because they found the evidence to be irrelevant under Rule 401. *See, e.g., State v. Clarke,* 343 N.W.2d 158, 162 (Iowa 1984); G. Joseph & S. Saltzburg, *Evidence in America: The Federal Rules in the States,* ch. 11, p. 4 (1987).

**3.** Although we have identified two factors to be considered by a trial court when balancing the probative value of evidence against the danger of unfair prejudice, we do not imply that these factors must be applied mechanically, or, for that matter, that they are the only factors that a court might consider.

court, the defendant's offer of proof does not establish either that a victim had prior sexual experience, or that this prior sexual experience provided the victim with the ability to fabricate in the present case, then the trial court should exclude the evidence because its probative value is substantially outweighed by the danger of unfair prejudice.

We now turn our attention to the Appellants' respective trials to determine whether our ruling to this point warrants reversal of their convictions.

## THE EFFECT OF OUR DECISION ON OLIVER'S CONVICTION

As part of his fabrication defense, Oliver wanted to introduce evidence of Jackie's prior sexual history to establish that she had independent knowledge of the physiological aspects of the alleged molestation. The trial court asked Oliver to make an offer of proof with respect to Jackie's prior sexual history. Oliver then described four separate incidents in which Jackie had been victimized. In the first, Oliver claimed that a cousin, with the aid of petroleum jelly, had vaginal intercourse with Jackie. This incident allegedly occurred approximately a year and a half before Jackie accused her father of molestation. Oliver also claimed that a neighbor, Michael Johnson, fondled Jackie on one occasion and had unsuccessfully attempted vaginal intercourse with her on another. Finally, Oliver claimed that when Jackie was visiting with her mother in California, Jackie witnessed a sexual act involving her mother and her mother's boyfriend.

Oliver asserted that, during a pretrial interview, Jackie had admitted that three of the incidents did, in fact, take place.

Oliver's attorney learned of the California incident after interviewing Jackie; therefore, he did not ask her whether this incident actually occurred.

The trial court ruled that, as a general proposition, *Pope* and *Lindsey* prohibit the admission of a victim's prior sexual history.[4] However, the trial court also found that Oliver was entitled to inform the jury that Jackie had independent knowledge of sexual matters; particularly, the trial court believed it was important that the jury understood that, prior to the alleged molestation, Jackie had knowledge of seminal fluids and ejaculation. To accomplish this goal, the trial court permitted either the defendant or the State, through leading questions, to draw forth from Jackie an admission that she had independent knowledge of ejaculation from experiences with someone other than Oliver.

Shortly before opening statements, the State and Oliver agreed to the form of the questions to be put to Jackie concerning her prior knowledge of ejaculation and seminal fluids. On direct examination, the State asked Jackie the following question:

Okay. Now, before this happened [the Oliver molestation] you knew that when people had sex that white stuff would sometimes come out of men's penises?

Jackie answered yes to the question.

We believe that the trial court's actions are in keeping with the spirit of the rule we have articulated today. The trial court listened to an offer of proof,[5] and, presumably, after determining that a sufficiently similar prior molestation occurred, admitted evidence of Jackie's independent knowledge of ejaculation and seminal fluids. Moreover, we approve of the trial

**4.** Oliver wanted to introduce the Michael Johnson incidents for two conflicting purposes. First, Oliver wanted to introduce evidence of Jackie's victimization at the hands of Johnson to establish her independent knowledge of sexual matters. Oliver also wanted to challenge Jackie's veracity by calling Johnson to testify that Jackie was falsely accusing Johnson of child molestation. Noting that Johnson certainly had a motive for testifying that he did not molest Jackie, and relying on *State v. Hutchinson*, 141 Ariz. 583, 688 P.2d 209 (App.1984), the trial court ruled that there was insufficient evidence

to establish that Jackie's charge against Johnson was unsubstantiated, and, accordingly, refused to admit such evidence. We believe that the trial court properly disposed of this issue.

**5.** Regarding Oliver's offer of proof, we must respectfully part company with the court of appeals. Although the court of appeals found Oliver's offer inadequate, we can hardly imagine a more sufficient offer than when the victim admits that prior molestations have occurred.

court's decision to restrict how the parties could elicit from Jackie evidence of her sexual knowledge. Although Oliver was entitled to present evidence that Jackie was familiar with seminal fluid and ejaculation, the trial court had a duty to protect Jackie "from harassment or undue embarrassment." Rule 611(a)(3), Ariz.R.Evid., 17A A.R.S. (Supp.1987); *United States v. Colyer*, 571 F.2d 941, 947, n. 7 (5th Cir.1978). Whenever possible, we believe the trial court should endeavor to protect minor victims from unwarranted and unreasonably intrusive cross-examination by requiring counsel to demonstrate, if possible, independent knowledge of sexual matters without producing evidence of the details of the victim's previous sexual experience. *See generally Arenda*, 416 Mich. at 13, 330 N.W.2d at 818.

 A trial court has broad discretion to admit or exclude evidence at trial. *State v. Williams*, 132 Ariz. 153, 157, 644 P.2d 889, 893 (1982). Absent a clear abuse of discretion, a trial court's evidentiary findings will not be overruled. *State v. Fisher*, 141 Ariz. 227, 242, 686 P.2d 750, 765, *cert. denied*, 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984). For all the aforementioned reasons, we do not believe that the trial court abused its discretion.

## THE EFFECT OF OUR DECISION ON CORDONE'S CONVICTION

During pretrial interviews of Jeremy and John, Cordone learned that Jeremy claimed that, at the age of 11, he had engaged in vaginal intercourse with as many as four girls his own age. Jeremy also claimed that a girl performed oral sex on him, and that he and John had exchanged "blow jobs." John confirmed that he and Jeremy had been sexually intimate. The State moved *in limine* to preclude Cordone from cross-examining John and Jeremy as to any of this sexual activity. Cordone objected, claiming that he was entitled to cross-examine the victims on these subjects to (1) show support for his fabrication defense, (2) to shed light on the victims' credibility, (3) to establish that John had a tendency to exaggerate, and (4) to establish that Jeremy and John had a motive for falsely accusing him.

The trial court ruled that this evidence was inadmissible as a general proposition, but, pending its review of the victims' testimony, the court indicated that it might allow Cordone to cross-examine the victims regarding this evidence in some limited fashion. Prior to completing his cross-examination of John, Cordone again urged that he should be allowed to cross-examine the victims with respect to their prior sexual histories. The trial court denied the motion, indicating that it now considered its ruling final.

 Cordone now argues that, under the confrontation clause, he had an absolute right to elicit evidence at trial of the bias, motive, exaggeration or unbelievability of the victims or their testimony. We agree with Cordone that the Sixth Amendment confrontation clause gives all criminal defendants the right to cross-examine witnesses against them. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed. 2d 347, 353 (1974). Moreover, the compulsory process clause grants all criminal defendants the right to present witnesses in their defense. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Together, these clauses guarantee all criminal defendants the right to present a defense. *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). However, the Sixth Amendment right to present evidence in one's defense is limited to evidence which is relevant and not unduly prejudicial. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986). Accordingly, Cordone is mistaken when he asserts that he had an absolute right to cross-examine Jeremy and John with respect to their prior sexual histories. *Id.*

Nevertheless, under our ruling today, the trial court could properly preclude Cordone from introducing evidence of the victims' prior sexual histories only if the evidence were either irrelevant or more prejudicial than probative. Such being the case, we must consider whether the precluded evi-

dence was admissible under any of the four purposes Cordone suggests.

Cordone maintains that he should have been allowed to introduce evidence of the victims' prior sexual histories to rebut the inference that the only reason the victims could describe the molestation was because it did, in fact, occur. At the time of trial, John and Jeremy were 16 and 15 years old, respectively. Additionally, the City of Tucson police officer, Joyce Lingel, who initially investigated the molestation charge, indicated that the victims were 13 and 12 years old when she first interviewed them concerning the molestation. Moreover, the testimony of both victims was not particularly explicit.[6] Given the age of the victims and the rather unexplicit nature of their testimony, we find it unlikely that a jury would infer that the victims could only describe the molestation because Cordone had, in fact, molested them.

Cordone also asserts that he should have been able to introduce evidence of the victims' prior sexual histories to attack their credibility. In *Pope*, we held that character evidence concerning unchastity is inadmissible to impeach the credibility of a forcible rape victim. *Pope*, 113 Ariz. at 29, 545 P.2d at 953. Having already extended *Pope* to child molestation cases, it implicitly follows that evidence of a minor victim's prior sexual history is inadmissible to impeach the credibility of the victim in a molestation case. Moreover, under 608(b), Ariz.R.Evid., 17A A.R. S. (Supp.1987), prior bad acts of a witness may not be inquired into unless the acts are probative of truthfulness or untruthfulness. Simply stated, evidence of sexual misconduct is not probative of truthfulness. *Pope*, 113 Ariz. at 28–29, 545 P.2d at 952–53; M. Udall & J. Livermore, *Arizona Law of Evidence* § 48 (2d ed. 1982).

Cordone next maintains that he should have been permitted to introduce evidence of John's boasting about his sexual exploits with young girls to show that John has a tendency to exaggerate.[7] However, prior demonstrations of braggadocio and mendacity are not automatically admitted under Rule 608(b). The utility of such evidence must be weighed against the possibility of prejudice under Rule 403. *State v. Woods*, 141 Ariz. 446, 450, 687 P.2d 1201, 1205 (1984). Where past acts of untruthful ers are wholly unrelated to the matter in issue, then the evidence may be, in the discretion of the court, properly excluded under Rules 608(b) and 403. *State v. Cook*, 151 Ariz. 205, 206, 726 P.2d 621, 622 (App. 1986) (exclusion of statement that sexual assault victim made to doctor, that she had not had sexual conduct with a man for two or three years, and later statement made to the doctor that she had been living with male friend for six or seven months prior to assault incident, was proper, where falsehood to doctor had nothing to do with doctor's examination, and was wholly unrelated to issues in case).

We fail to see how an 11–year-old boy's bragging about his sexual conquests with several young girls is particularly probative of his character for truthfulness. Moreover, this evidence is unrelated to the matter in issue. Additionally, John's exaggerated claims are somewhat remote in time from his trial testimony. Finally, the introduction of such evidence might lure counsel into matters precluded by *Pope*. *Cook*, 151 Ariz. at 206, 726 P.2d at 622. For all the above reasons, we find that the trial court could have properly excluded the evidence under Rules 608(b) and 403.

Finally, Cordone argues that the victims' prior sexual histories were relevant to establish that John and Jeremy had a motive for falsely accusing him. In essence, Cordone argues that John had a retaliatory motive for testifying against Cordone because John was humiliated when he was observed masturbating in Cordone's trailer. At trial, however, John testified that he did not feel any particular animosity toward Cordone when he called

---

6. At its most graphic, the testimony of the victims merely indicated that Cordone had placed his mouth on their penises.

7. In this vein, Cordone also wanted to introduce evidence that John bragged that he was capable of urinating with an erection.

**32**

Detective Lingel, and that he called the police because he realized Cordone's actions were wrong. Additionally, John indicated that he wanted to get help for Cordone. Finally, it is far-fetched to assume that a teenage boy who is embarrassed when caught masturbating will retaliate by drawing attention to the fact that he has been a party to a homosexual relationship. In Arizona, evidence of prior sexual history is inadmissible on the issue of motive unless the record clearly establishes a factual predicate from which motive can be inferred. *State v. Holley*, 123 Ariz. 382, 384, 599 P.2d 835, 837 (App.), *cert. denied*, 444 U.S. 970, 100 S.Ct. 464, 62 L.Ed.2d 386 (1979). We find that such a factual predicate is lacking in the record before this court.

As we noted earlier, rulings on admissibility of evidence are largely within the sound discretion of the trial court and appellate courts will not substitute their judgment for that of the trial court, absent a showing of abuse of discretion. *State v. Chapple*, 135 Ariz. 281, 290, 660 P.2d 1208, 1217 (1983). With respect to the trial court's ruling that Cordone was precluded from cross-examining the victims regarding their prior sexual histories, we find no showing of abuse of discretion.

### CONCLUSION

We have searched the record for fundamental error according to the mandate of A.R.S. § 13–4035, *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). We have found none. We affirm both convictions.

FELDMAN, V.C.J., and CAMERON, HOLOHAN and MOELLER, JJ., concur.