**UNITED STATES, Appellee,**

v.

**Private (E-1) Roosevelt DORSEY, SSN 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, United States Army, Appellant.**

**CM 440998.**

U. S. Army Court of Military Review.

29 July 1982.

Major Raymond C. Ruppert, JAGC, Major Joyce E. Plaut, JAGC, and Captain Kenneth G. Gale, JAGC, were on the pleadings for the appellant.

Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, Major John T. Meixell, JAGC, Captain Kenneth H. Clevenger, JAGC, and Captain John J. Park, Jr., JAGC, were on the pleadings for the appellee.

Before O'DONNELL, KUCERA and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

KUCERA, Judge:

The appellant, Private Dorsey, was convicted by general court-martial of rape, assault with intent to commit voluntary manslaughter and communication of a threat in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934. He was sentenced to a dishonorable discharge, confinement at hard labor for ten years, forfeiture of all pay and allowances and reduction to the grade of Private E-1. The convening authority approved the sentence as adjudged.

The first of the five errors urged to this Court by Dorsey's appellate defense counsel concerns the admission of evidence under Rule 412, Military Rules of Evidence. We find the asserted error to be without merit.

The victim of the alleged rape, Private Rainey, testified that after midnight on the night in question, Dorsey came to her room three times. The first two times Dorsey claimed he was looking for his roommate, Murphy, because he (Dorsey) had locked himself out of their room. After the second visit, Murphy, who was then in Rainey's room, left with Dorsey. However, Murphy apparently did not have the keys, because on the third visit Dorsey returned alone and asked Rainey to look for Murphy's keys. After Rainey told him that the keys were not there, Dorsey invited her to visit him and Murphy in their common lounge area. She agreed in order to stop him from continuously coming back and told him that she would be there in ten minutes. After she dressed and came out of her room, Dorsey was waiting for her. When they arrived at Dorsey's room, he used a key to enter; they talked and then Dorsey forcibly prevented her from leaving and raped her.

Dorsey, on the other hand, testified that on his third visit to Rainey's room he told her that he wished he had some company and Rainey replied that she would be down in ten minutes. He left and was in his room watching TV and counting his money when, to his surprise, Rainey appeared at his door.[1] They sat on his bed and talked; Dorsey "fiddled" with a small ornamental button on the shoulder of her sweater. When he stopped, she stood up and stripped to her slip. For a moment, he was speechless, because he did not want to have sex with her. He was tired, had to report for duty approximately one hour later, and, believing that Murphy had had sex with her earlier, was reluctant to be "second." Instead, he "kind of rubbed her knee like," and asked her how she "classified" herself; before she could answer, he beat her to the punch by telling her that she was a "whore," married, and just had sexual relations with his roommate and now wanted to have sex with him. In response, Rainey dropped her head, began to cry, ran out of Dorsey's room and left the billets.

The trial defense counsel moved that the defense be permitted to introduce evidence to show the sexual conduct between Rainey and Murphy several hours prior to the alleged rape on the ground that it would support a defense theory that the allegation of rape was Rainey's fabricated response to Dorsey's accusatorial statement. It was argued that such evidence would strengthen Dorsey's claim that the reason for Rainey's false accusation was her bias and anger towards Dorsey and that its admission was

---

1. Q: Now, Private Dorsey, were you surprised to see Specialist Rainey at the door to your room after you'd asked her earlier for some company?
 A: Yes, I were. When I—when I made—when I said that to her, I was thinking of—like—that—that she, you know, that she wouldn't, you know, wouldn't—that perhaps that, you know, she would think about it and maybe some other time, you know, that, you know, I see her that she still, you know, remember that what I had said to her, you know, but at the time, I didn't think that she was going to come down to the room right then, within that same night. Well, I was kind of like, you know, making a point to her that I wouldn't mind, you know, having sex with her, you know.

constitutionally required. Memorandum of Law, Appellate Exhibit IV.[2]

The military judge limited presentation of such evidence. He barred introduction of extrinsic evidence concerning the alleged act of sexual intercourse between Rainey and Murphy but allowed presentation of testimony as to what Dorsey believed and may have said about it to Rainey.

█ Specifically, he ruled that "evidence about what the accused said in the entire statement will be admissible from whatever source. . . . Evidence of the act, itself, other than that statement, is inadmissible from whatever source."

Rule 412(b) states:

(b) Notwithstanding any other provision of these rules or this Manual, in a case in which a person is accused of a nonconsensual sexual offense, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is—

(1) admitted in accordance with subdivisions (c)(1) and (c)(2) and is constitutionally required to be admitted; or

(2) admitted in accordance with subdivision (c) and is evidence of—

(A) past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

(B) past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which the nonconsensual sexual offense is alleged.

The evidence in controversy is not admissible under either situation set forth in subdivision (b)(2). The only remaining question is whether its admission is constitutionally required under Rule 412(b)(1). We hold that it is not.

"The Sixth Amendment right to confrontation and the Fifth Amendment right to due process of law require only that the accused be permitted to introduce all relevant and admissible evidence." *United States v. Kasto*, 584 F.2d 268, 272 (8th Cir. 1978) (citations omitted), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979). Aside from the question of whether or not the act of sexual intercourse between Rainey and Murphy occurred, Dorsey's accusatory statement to Rainey is some evidence of Rainey's motive to fabricate. Albeit weak but nevertheless relevant, the evidence of such a statement was properly ruled admissible by the military judge. On the other hand, the apparent purpose for the admission of evidence of sexual intercourse between Murphy and Rainey was to bolster Dorsey's claim that the allegation of rape against him was nothing more than the fabrication of a spurned adulterous strumpet which would thereby enhance the credibility of his incredible claim [3] that no sexual intercourse between him and Rainey

---

2. Appellate Exhibit IV:

In the present case the issue is not consent. There is denial that any intercourse ever took place between the defendant and the alleged victim. The defense does not intend to introduce the victims [sic] sexual history, merely one episode, closely related in time to the alleged rape to show her state of mind at the time the defendant made his statement. Such evidence is highly probative. It goes to the issue of bias and provides an explanation of the victims [sic] actions at the time the rape is alleged. It provides a motive for the victim to claim to her roommates that she was raped by the defendant. The evidence will hardly interfere with the States [sic] interests in encouraging rape victims to report rapes and to disallow the presentation of this evidence would amount to denying the defendant the right to defend himself.

3. From the evidence of record we conclude that on the night in question, Dorsey was on the prowl. He came to the barracks room of Rainey and her roommates Young and Wheeler three different times with the contrived reasons of looking for his roommate Murphy, a light for his cigarette and the keys to his room. He told Wheeler "You two-cent whore, you don't have to give me any." Similarly contrived was the reason he gave to Rainey for joining him and Murphy out in their common living area: they were locked out of their room. He had the keys and only wanted to get Rainey out of her room. He was not tired—he was looking for sex.

had taken place. The extrinsic evidence of the act of intercourse would have added nothing toward the resolution of Dorsey's claim that no sex took place. Because of its irrelevancy and lack of probative value, its admission was far from constitutionally required.

The military judge's ruling offered Dorsey a fair opportunity to establish his defense. *See Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Dorsey himself testified and placed before the court his entire theory of defense. He was free to, and in fact did, testify as to what he believed about Rainey's prior sexual act with Murphy. When asked what the exact reasons were for not wanting to sleep with her, he told the court that he assumed that she had had sex with his roommate and he did not want to be second.[4] Under these facts we hold that there was no constitutional violation.

 The remaining errors urged by appellate defense counsel assert different aspects of evidentiary sufficiency. We have considered them as well as all errors asserted by the appellant Dorsey in his request for appellate representation[5] and find them all similarly meritless.

The findings of guilty and the sentence are AFFIRMED.

Senior Judge O'DONNELL and Judge LEWIS concur.

---

4. Q: What were the exact reasons that you did not want to sleep with Private Rainey?
A: Because I assumed that she had had sex with my roommate and—and when she—and I know that he was up there in her room and since—when I knocked on the door that—that—well, I guessed that he was with her because they had went out earlier that night—earlier within that day. And by her just getting up—getting—getting out—getting out of bed, coming down to my room a couple of minutes after I had left, I feel that she wasn't clean, you know, and—and I didn't—I didn't want to be, you know—you know, second, you know.

5. (1) Denial of a defense request to admit results of polygraph examination of the rape victim; (2) ineffective assistance of counsel; (3) denial of a defense motion for a new pretrial advice and Article 32, 100 U.S.C. § 832 Investigation hearing; (4) improper limitation of testimony as to the victim's prior sexual misconduct; (Ɔ) refusal of the military judge to give defense requested instructions; (6) three separate instances of improper argument, comment on, and characterization of evidence by the prosecution; (7) improper voire dire examination by the prosecution; and (8) insufficiency of evidence for findings of guilty of rape.