**UNITED STATES, Appellee,**

v.

**Specialist Five Dewayne P. FERGUSON, SSN 587–09–8999, United States Army, Appellant.**

**CM 440696.**

U. S. Army Court of Military Review.

21 Oct. 1982.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, and Captain James A. McAtamney, JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, Major John T. Meixell, JAGC, and Captain Mark S. Julius, JAGC, were on the pleadings for appellee.

Before FULTON, COHEN and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

A general court-martial of six officer and enlisted court members convicted appellant of two specifications of rape and one specification of forcible sodomy. They sentenced him to forfeit all pay and allowances, to be discharged with a bad-conduct discharge, and to be confined at hard labor for ten years. The convening authority reduced the term of confinement to five years, but approved the sentence otherwise and the record now is before this Court for review pursuant to Article 66 of the Uniform Code of Military Justice, 10 U.S.C. § 866 (1976). We find that, because of constitutional error in the exclusion of evidence offered by the appellant, a rehearing is required.

The victim, a servicewoman, testified that she met the appellant when he struck up a conversation with her while she was shopping one evening in a convenience store at Fort Sam Houston, Texas, where she was undergoing initial training as a member of the Army National Guard of her State. She said that she reluctantly, but ultimately, yielded to his entreaties to accompany him in his automobile to the Non-commissioned Officers' (NCO) Club for a drink. There were detours to an off-post store for a bottle of wine and two stops at the post guesthouse, where he said he lived, but where, according to the attendant, the appellant tried unsuccessfully to obtain a room. The victim said she tolerated these detours trusting that they eventually would stop at the NCO Club, but instead he drove to remote areas of the post, at one of which he forced her to commit fellatio then raped her twice. Afterwards, he drove her to a point near her barracks and let her out of the car after threatening several times to kill her if she told anyone. Appearing disheveled, crying, and frightened, she reported the attack to her roommate and was soon transported to a hospital.

Appellant's version was quite the opposite. According to him, sexual intercourse was their understood and shared goal from

the time of their leaving the Shopette where they met. She consented to this relationship although she had been told by him that he was married and lived with his wife and child at Fort Hood, Texas. He denied that any sodomy was performed, but said that after they had engaged in vaginal intercourse twice, they did it a third time at her urging. Only as they were returning towards the barracks, he said, did she show any dissatisfaction with their relationship. He testified that when asked when she would see him again his reply indicated uncertainty. Pressed for an explanation, he reminded her that he was married and was stationed at Fort Hood. When he indicated that he might not see her again, he said her angry rejoinder was "All of you all are just alike. All you're looking for is a one night stand and all of you are just alike." Highly upset, she then asked him to stop at a point somewhat away from her barracks, got out, slammed the door, went toward the barracks, and, he said, subsequently falsely accused him of rape and sodomy.

In support of his contention that the accusation was falsely made (and also to show a basis for her anticipated emotional upset when testifying), appellant offered to prove through cross-examination of the victim that she, a caucasian, had once been engaged to marry a man who, like appellant, was black; that she had become pregnant by him; that she had undergone an abortion; and that, despite her efforts at reconciliation, the man had terminated the engagement. This was to be accompanied by the testimony of an Army psychiatrist, who was not acquainted with the victim, but whose experience included counselling parties to aborted pregnancies, to the effect that the psychological trauma involved in undergoing an abortion, particularly when heightened by a breakup of the relationship with the father, can produce a reaction of vengefulness and possible false accusation when the female is again seemingly faced with a similar rejection.

■ The offer of proof was made pursuant to Military Rule of Evidence 412(c). Rule 412 is designed to shield the victim of a sexual assault (not limited to rape) from harassment and embarrassment by the presentation of evidence which concerns past behavior and is of little, if any, probative value, but which contains great potential for distracting the triers of fact. Manual for Courts-Martial, United States, 1969 (Revised edition), App. 18 at A18–65 (1980) (drafters' analysis of Rule 412); *United States v. Hollimon,* 12 M.J. 791, 793 (A.C.M. R.), *pet. granted,* 13 M.J. 242 (C.M.A.1982). The rule forbids introduction of reputation or opinion evidence concerning the victim's past sexual conduct. Mil.R.Evid. 412(a). Other evidence relating to the victim's sexual conduct is admissible only if it is one of the following three types: (i) evidence of sexual behavior with persons other than the accused if offered to show that the accused was not the source of semen or injury; (ii) evidence of past sexual behavior with the accused if offered on the issue of consent; or (iii) other evidence of past sexual conduct if "constitutionally required to be admitted." Mil.R.Evid. 412(b).

The rule provides the additional safeguard of a hearing outside the presence of the members of the court to determine the admissibility of proffered evidence. "At such hearings the parties may call witnesses, including the alleged victim, and offer relevant evidence." Mil.R.Evid. 412(c)(2).

The trial counsel opposed admission of the defense evidence on several grounds, making his own offer of proof that the abortion and termination of the engagement had occurred more than a year earlier and, moreover, were decisions mutually and amicably arrived at by the complainant and her fiance. No testimony was actually taken, but the military judge carefully questioned both counsel and was assured that their offers of proof encompassed all of the expected testimony. After considering the offers of proof, briefs, and arguments of both sides, the military judge ruled the evidence inadmissible, saying, "I feel that you have the exact type of case which Rule 412 was designed to cover. And your offer of proof as to motive to testify falsely in this case is so speculative in nature that I

feel it has [no] probative value.... So, I will not allow questions of the victim as to her past sexual conduct unless they are incid[ents] which are specifically covered by Rule 412." (Presumably meaning evidence of the type listed as (i) and (ii), above.)

Since the evidence proffered by the defense neither pertained to prior conduct between the victim and the accused nor dealt with the question whether he was the source of injury or semen, the sole question is whether the evidence was admissible under the exception for evidence "constitutionally required to be admitted." Mil.R. Evid. 412(b)(1). We hold that the proffered evidence was admissible pursuant to that exception.

The constitutional requirement involved here is the sixth amendment's guarantee of the right to confrontation.

The Sixth Amendment right of a criminal defendant 'to be confronted with the witnesses against him' includes the right to impeach credibility through cross-examination. *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–1110, 39 L.Ed.2d 347 (1974). Because a witness's bias is 'always relevant as discrediting the witness and affecting the weight of his testimony,' the Supreme Court has 'recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.' *Id.* at 316–17, 94 S.Ct. at 1110 (citations and footnotes omitted). Although the trial judge retains the traditional discretion to limit the scope of cross-examination, discretion in the area of bias evidence becomes operative only after the constitutionally required threshold level of inquiry has been afforded the defendant. *Chipman v. Mercer,* 628 F.2d 528, 530 (9th Cir.1980); *United States v. Mayer,* 556 F.2d 245, 250 (5th Cir.1977); *United States v. Bass,* 490 F.2d 846, 857–58 n. 12 (5th Cir.1974); *Wheeler v. United States,* 351 F.2d 946, 947 (1st Cir.1965). *United States v. Tracey,* 675 F.2d 433, 437 (1st Cir.1982); *accord, Greene v. Wainwright,* 634 F.2d 272, 275 (5th Cir.1981).

Therefore, a state rape-shield law which does not contain the express exception for evidence constitutionally required to be admitted, such as found in Rule 412, nevertheless has been held to permit proof that a rape complainant had twice recently been arrested and charged with prostitution. The purpose was to show that, on being arrested a third time under similar circumstances, she, in order to avoid prosecution, claimed that she was the victim of a rape. *Commonwealth v. Joyce,* 382 Mass. 222, 415 N.E.2d 181 (1981). The right of confrontation likewise requires that a rape defendant be permitted to show whether the complainant's motive in accusing him was to conceal from her parents her pregnancy (as she believed) caused by voluntary intercourse with someone else. *State v. DeLawder,* 28 Md.App. 212, 344 A.2d 446 (1975). Similarly, an adult defendant should have been permitted to present evidence tending to show that the 10-year-old complainant falsely accused him of rape because he had told her that he was going to inform her parents that she had engaged in sexual activity with his son and others. *State v. Jalo,* 27 Or.App. 845, 557 P.2d 1359 (1976); *cf. Commonwealth v. Duncan,* 279 Pa.Super. 395, 421 A.2d 257 (1980) (contrary result under Pennsylvania statute, but unresolved constitutional question noted).

However, it also has been held that, *Davis v. Alaska...* [does] not require a trial court to permit cross-examination on topics of very slight or marginal relevance simply upon the theory that bias or prejudice might be disclosed. Although it tips the scales in favor of permitting cross-examination, the confrontation clause does not prevent the trial court from weighing the offer of proof to determine its probative value to the trier of fact and its probable effect on the fair and efficient conduct of the trial.

*Chipman v. Mercer,* 628 F.2d 528, 531 (9th Cir.1980); *see* S. Saltzburg, L. Schinasi & D. Schlueter, Military Rules of Evidence Manual 208 (last paragraph) (1981) (discussing whether evidence offered under Rule 412(b)(1) must be shown to be more probative than prejudicial); *cf.* Mil.R.Evid. 403.

Accordingly, when evidence offered on the issue of a rape complainant's bias is not probative of the purported reason for false accusation, it is not relevant and has been excluded. Mere evidence that a woman's menstrual period was a few days late is not probative of the theory that she falsely charged rape to conceal the preexistence of pregnancy. *State v. McFarland,* 604 S.W.2d 613 (Mo.App.1980). Without an offer of proof that the complainant's boyfriend did not already know that she had a venereal disease, she could not be cross-examined in an effort to show that her claim of rape was made falsely in an effort to conceal from her boyfriend that the true source of the disease was voluntary intercourse with a third person. *Milenkovic v. State,* 86 Wis.2d 272, 272 N.W.2d 320 (Ct. App.1978). Similarly, without an offer of proof that a girl's mother did not already know of the girl's sexual activity with her boyfriend, she could not be cross-examined concerning such conduct in an effort to show that she falsely accused the defendant of rape to conceal from her mother the fact that she had contracted a venereal disease from her boyfriend. *State v. Grice,* 123 Ariz. 66, 597 P.2d 548 (Ct.App.1978). *See State v. Holley,* 123 Ariz. 382, 599 P.2d 835, 837–38 (Ct.App.1979) (factual predicate for motive to testify falsely must be shown).

Another consideration to be taken into account is whether the defense, even without the challenged evidence, has been able to fully develop the issue of bias. *See Davis v. Alaska,* 415 U.S. at 319, 94 S.Ct. at 1111; *United States v. Tracey,* 675 F.2d at 437; *cf. People v. Mandel,* 48 N.Y.2d 952, 425 N.Y.S.2d 63, 401 N.E.2d 185, 187 (1979), *rev'g,* 61 A.D.2d 563, 403 N.Y.S.2d 63 (1978), *cert. denied,* 446 U.S. 949, 100 S.Ct. 2913, 64 L.Ed.2d 805 (1980) (exclusion of hospital record of mental treatment not abuse of discretion when other testimony as to complainant's mental condition was admitted and no offer was made of expert testimony making condition treated at hospital relevant to case at hand).

Accordingly, when an accused contended that the rape complainant accused him falsely because he had spurned her and accused her of having had intercourse with his roommate, evidence that the intercourse with the roommate had in fact occurred "added nothing" to the defense (which was that no intercourse had taken place between the complainant and the accused), and that, "because of its irrelevancy and lack of probative value," evidence of her intercourse with the roommate "was far from constitutionally required." *United States v. Dorsey,* 14 M.J. 536 (A.C.M.R. 1982).

■ In our view, the scale in this case should have tipped in favor of permitting the defense to cross-examine the complainant in its effort to show that a false accusation of rape could arise as an act of revenge stemming from the prior experience of an abortion followed by rejection by the lover.

Medical testimony that the psychiatric sequelae of abortion, aggravated by rejection, may produce the result claimed by the defense made the evidence sufficiently relevant to the issue of bias. *See generally,* 4B R. Gray, Attorneys' Textbook of Medicine para. 311.89 (3d ed. 1981); L. Kolb, Noyes' Modern Clinical Psychiatry 446–48 (7th ed. 1968). Although there indeed was, as with all psychiatric testimony, a significant degree of speculativeness (which normally affects weight rather than admissibility), the countervailing considerations as to admissibility were not great. The victim was the government's principal witness against the accused. There was no alternative way in which her possible motivations in this regard could be explored without the disclosure of prior sexual activity on her part, which, however, was only incidental to the defense theory and certainly not suggestive of promiscuity. There was little likelihood that the military court members would be confused as to the real issues in the case, misled as to the weight of the evidence, or that the testimony would prejudice them with a belief that the alleged victim was an immoral person who probably had consented to intercourse.

We cannot speculate as to whether the court members would have accepted the

line of reasoning which the defense sought to present, but we conclude that the court members were entitled to have the benefit of this evidence so that they could make an informed judgment as to the weight to place on the victim's testimony for credibility was the ultimate issue in this case. *See Davis v. Alaska,* 415 U.S. at 318, 94 S.Ct. at 1111; *cf. Cox v. State,* 51 Md.App. 271, 443 A.2d 607, 616 (1982) (Wilner, J., concurring) (issue is not whether appellant *should* have been convicted, but whether he was *properly* convicted).

Also, we cannot say that beyond any reasonable doubt the exclusion of the evidence did not affect the findings. Accordingly, the error was not harmless. *Compare United States v. Barnes,* 8 M.J. 115, 116–17 (C.M.A.1979), *with United States v. Ward,* 1 M.J. 176, 179–80 (C.M.A.1975) (test for harmlessness of constitutional error); *cf. United States v. Allen,* 7 M.J. 345 (C.M.A. 1979) (constitutional error harmless if overwhelming evidence supports guilty verdict).

Since a rehearing is in order, we need not discuss appellant's assignment of error in the denial of his challenge of one of the court members for cause. As for the remaining assigned errors, we hold:

a. Under circumstances which included full and specific offers of proof and no demand by counsel for either side for the presentation of live testimony, or objection to the procedure used, we cannot conclude that the military judge abused his discretion by ruling on the admissibility of the evidence discussed above without hearing the testimony of the witnesses involved.

b. The military judge's instruction on reasonable doubt was not incorrect; nor did he err in declining to give the instruction sought by the defense.

c. The military judge did not err in declining to give the defense-requested instruction that "charges such as the ones... in this case are easy to make and hard to defend against, even by one who is guiltless. Where the Government relied on the uncorroborated testimony of the alleged victim [,] you ... should be cautioned [sic] of convicting upon such evidence. The rea-

son is that for motives unknown the charges may be made when no offense at all has been done." Whether such an instruction could be proper in any case need not detain us; here, the complainant's testimony was not without corroboration, albeit circumstantial.

For the reasons previously indicated, the findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Judge NAUGHTON concurs.

Judge COHEN did not participate in this decision.