UNITED STATES, Appellee,

v.

Specialist Ricardo V. BUENAVENTURA, 615–20–1988, United States Army, Appellant.

ACMR 9200939.

U.S. Army Court of Military Review.

6 July 1994.

---

For Appellant: Major Robin L. Hall, JAGC, Captain Robert H. Pope, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Captain John P. Saunders, JAGC (on brief).

Before WERNER, LANE, and HOSTLER, Appellate Military Judges.

## OPINION OF THE COURT

LANE, Judge:

On mixed pleas, the appellant was convicted by a general court-martial composed of officer members of absence without leave, two specifications of rape, two specifications of indecent acts with a child under sixteen years of age, indecent liberties with a child under sixteen years of age, and two specifications of breaking restriction in violation. of Articles 86, 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 920 and 934 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for twelve years, forfeiture of all pay and allowances, and reduction to Private E1.

Citing the "constitutionally required" exception to Military Rule of Evidence 412 [hereinafter Mil.R.Evid.], the appellant asserts, inter alia, that the military judge erred in excluding evidence of sexual abuse of the victim by her grandfather and how this abuse may have psychologically affected her, thus denying the appellant "his only viable defense" to the sexual offenses. We disagree.

### I. Facts

The sexual offenses of which the appellant was convicted reportedly occurred in the Fort Lewis, Washington, quarters of his sister and brother-in-law. The appellant visited in those quarters for approximately one month before deploying to, and for approximately one month upon his return from, Saudi Arabia. This latter visit was from August to September, 1991. The victim, A, is the

appellant's niece. At the time of the alleged offenses, A was eight years of age.

On 10 September 1991, A, on her own initiative, sought out a school counselor and reported that she had been sexually molested by her grandfather [1] and the appellant. She repeated these allegations in subsequent discussions with a therapist and Dr. Peterson, a clinical psychologist, both of whom appeared as government witnesses during the appellant's trial. During these discussions, A's descriptions of some of the abusive acts she ascribed to the appellant were similar in a number of particulars to the abusive acts she ascribed to her grandfather.

At trial, the appellant sought to be allowed to admit evidence of A's molestation by her grandfather (through the testimony of A's father and the school counselor) and the testimony of Dr. Peterson as to its possible impact on A's psychological condition.[2] This evidence formed the basis of the appellant's defense that A was subconsciously substituting the appellant for the grandfather when recalling the incidents of abuse. The military judge denied the defense motion, finding that the matter was not of constitutional proportions so as to fall under that exception in Mil.R.Evid. 412.

When Dr. Peterson appeared during the trial as a government expert witness, the appellant's counsel requested an Article 39(a), 10 U.S.C. § 839(a), UCMJ, session. He objected to the government's proffer that Dr. Peterson would only discuss various concepts relative to child abuse without tying them to this case specifically. He claimed once again that this denied the defense the benefit of Dr. Peterson's expert opinion on the appellant's contention that children often try to "normalize" memories of abuse by incorporating a friendly, nonabusive person into their recall of the abuse. The military judge called Dr. Peterson to testify at the Article 39(a), UCMJ, session, so that he could hear the expert testimony before ruling on what testimony would be allowed before the panel.

During the trial counsel's direct examination, Dr. Peterson stated that it was common for children to delay reporting abuse, that if molested more than once there could be inconsistencies in tying the abuse to different people, that children do remember important events but remember more recent events best (the concept of "recency"), and that a child's temporal understanding is not well-developed.

Under cross-examination by the defense counsel, Dr. Peterson testified that persons suffering from post-traumatic stress disorders relive the stressful events, often vividly. He stated that he had interviewed A and studied materials relating to her case, and that he had diagnosed A "as suffering from a post-traumatic stress type of disorder." Counsel next asked if Dr. Peterson had an opinion, based on A's reports of abuse, as to whether, on 10 September 1991, she had recently suffered a post-traumatic stress event. Dr. Peterson said that "it was my impression ... that she was experiencing some signs of post-traumatic stress at that time." Defense counsel then pressed with the question of whether such an event could affect the victim's concept of recency. Dr. Peterson stated that "[i]t's possible that recency would not apply because of the recall— the vividness of the recall of the original post-traumatic event—the stressful event."

---

1. A's maternal grandfather had been living in the home for some time, including the time of the appellant's first visit. However, he left while the appellant was deployed to Saudi Arabia.

2. Procedurally, this arose in a request that the ruling of the first military judge be reconsidered by his successor military judge. The defense had initially sought the appearance of A's grandfather as a defense witness, but subsequently sought to pursue this area through other witnesses. Also, supporting psychiatric opinion had not been available to the defense, and thus not offered, during early litigation of the issue.

The defense was persistent throughout the trial in its attempt to place evidence of the grandfather's sexual abuse of A before the members. Finally, during the sentencing portion of the trial, the defense was permitted to introduce evidence of A's abuse by her grandfather in rebuttal to matters presented by the government. The military judge advised the members that he had not permitted such defense evidence earlier in the trial "because they [sic] were not relevant for the determination of guilt or innocence of this accused."

After some questions concerning cross-modal memory (the ability to identify past sensations through current visual stimulus) and accuracy of recollections, defense counsel asked about the concept of "normalization." Dr. Peterson first explained the concept as a child trying to make sense of something that is difficult for them to understand by reenacting the event in their play.[3] The defense counsel then asked if that concept included the phenomenon of "integrating a non-abusing person in the normalization process." Dr. Peterson responded:

Given the limited strategies a child has available to them to deal with events which are outside of [the] realm of normal experience, it would not be unusual for a child to attempt to make sense out of something that was horrific by replacing the individual who abused them with someone who is much more acceptable. It's not much not [sic] different than fantasizing about being married for a child who is eight or nine years old.

Dr. Peterson went on to say that it was not that the child was lying, but that the child's recall had to be examined "memory-by-memory." Defense counsel closed his examination of Dr. Peterson with the following exchange.

Q. Doctor Peterson, let me ask you one question. You have interviewed the child, reviewed the records and statements, done testing, and made a diagnostic finding. Is that correct?

A. Correct.

Q. Are your findings, based on your training, testing, and expertise, necessarily inconsistent with Specialist Buenaventura's claim that he didn't do it?

A. Not necessarily inconsistent.

The military judge then asked Dr. Peterson several questions, to "clear up my understanding." After explaining that younger children recall less, but with more accuracy, than older children, and that leading questions also elicit more information but not necessarily more accurate information, Dr. Peterson made the following statement concerning spontaneous, uninterrupted reports of abuse by children.

To answer that, I think it's necessary to look at the way in which the child reported and what the child reported. If they're reporting something which sounds like a normalized event which makes it something that might be expected at a later age and it's sort of romanticized, I suppose it would be one piece of evidence that it was a substitution of a person that was more acceptable for the other individual, but if it was simply a strict substitution with the same kind of offending, with the indicators of emotional trauma, then I think that it's possible that—equally possible that the child is reporting something that happened.

Ultimately, the military judge ruled that he would not allow the witness to get into a specific discussion of A or of a diagnosis of her, or other matters with regard to her condition.

## II. Military Rule of Evidence 412

■ Military Rule of Evidence 412 is intended to shield victims of sexual assaults from embarrassing and degrading cross-examination and evidence presentations by limiting when, and under what conditions, evidence of a victim's prior sexual behavior can be admitted. Manual for Courts–Martial, United States, 1984, app. 22, Military Rules of Evidence 412 analysis, at A22–34 [hereinafter Mil.R.Evid. 412 analysis]; see also 124 Cong.Rec.H. 11944 (remarks of Rep. Mann on federal rules). Specifically, it totally bars reputation and opinion evidence,[4] and evidence of specific past sexual behavior is admissible in only limited circumstances.[5] Fur-

---

**3.** The example he gave was of a child who loses a parent and who then begins to bury objects and pretend that the animals that he plays with are dying and go through mock funerals.

**4.** Military Rule of Evidence 412(a) provides that:
(a) Notwithstanding any other provision of these rules or this Manual, in a case in which a

person is accused of a nonconsensual sexual offense, reputation or opinion evidence of the past sexual behavior of an alleged victim of such nonconsensual sexual offense is not admissible.

**5.** Military Rule of Evidence 412(b) provides, in part, that:

thermore, it applies to "nonconsensual sexual offenses," which are defined as "sexual offense[s] in which consent by the victim is an affirmative defense or in which the lack of consent is an element of the offense. This includes rape, forcible sodomy, assault with intent to commit rape or forcible sodomy, indecent assault, and attempts to commit such offenses." Mil.R.Evid. 412(e).

## A. Applicability

■ While both counsel cited Mil.R.Evid. 412 in their arguments concerning testimony of sexual abuse by the grandfather and Dr. Peterson's expert testimony, the military judge did not specifically cite that rule as the basis for his ruling. True, the appellant was charged with rape, an offense in which the lack of consent is an element of the offense. Manual for Courts–Martial, United States, 1984, Part IV, para. 45b(1)(c) [hereinafter MCM, 1984]. Further, this is not changed by the fact that the victim is a minor; that fact only creates a presumption of a lack of consent. MCM, 1984, Part IV, para. 45c(1)(b) ("Likewise, the acquiescence of a child of such tender years that she is incapable of understanding the nature of the act is not consent."). *See United States v. Thompson*, 3 M.J. 168, 169 n. 1 (C.M.A.1977); *United States v. Huff*, 4 M.J. 816 (A.C.M.R.1978). Had the appellant been charged with carnal knowledge [6], would Mil.R.Evid. 412 be inapplicable? By the Manual definition, it would appear so. The same also can be said for the charges of indecent acts and indecent liberties. Yet the rationale for Mil.R.Evid. 412, the protection of the victim from an intrusion into her private life, seems to be equally important in those cases. In fact, when the victim is a child, it would seem even more important to protect her from prying and

innuendo. We hold that applying the principles of Mil.R.Evid. 412 in this case was a proper exercise of the military judge's discretion, and provides a reasonable framework, in conjunction with Mil.R.Evid. 702–704, for deciding the admissibility of the proffered evidence of both the grandfather's abusive conduct and Dr. Peterson's expert opinion.

Military Rule of Evidence 412 is similar in substantive scope to Federal Rule of Evidence 412 [hereinafter Fed.R.Evid.]. Mil.R.Evid. 412 analysis. Therefore, we can look to federal court decisions for guidance in the interpretation of the rule. *See also*, UCMJ art. 36(a). The Third Circuit Court of Appeals dealt with a case very similar to the instant case, where the trial judge denied a motion to require a psychiatric examination of the victim as that would violate the "spirit" of Fed.R.Evid. 412. *Government of the Virgin Islands v. Scuito*, 623 F.2d 869 (3d Cir. 1980). In *Scuito*, the defense presented an affidavit representing that the victim was said to be addicted to controlled substances and often appeared "spaced out," had appeared to act strangely during the previous trial, and that her conduct was "highly indicative of a personality which fantasizes." *Id.* at 874. The court recognized that Scuito was not trying to introduce the victim's past sexual conduct, but rather obtain an expert opinion on her ability to perceive reality and to separate fact from fantasy. Thus, he was arguing that the trial judge abused his discretion in denying the request under Fed.R.Evid. 412. The court, however, sided with the trial judge.

The judge's ruling, however, was not based on the letter but on the spirit of Rule 412. The principal purpose of the rule is, as its legislative history demonstrates, quite similar to the countervailing considerations quoted above: "to protect rape victims

(b) Notwithstanding any other provision of these rules or this Manual, in a case in which a person is accused of a nonconsensual sexual offense, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless ... [it] is—
　(1) constitutionally required to be admitted; or
　(2) is evidence of—
　(A) past sexual behavior with persons other than the accused, offered ... upon the issue of whether the accused was or was not, with

respect to the alleged victim, the source of semen or injury; or
　(B) past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented....

6. "Carnal knowledge" is sexual intercourse under circumstances not amounting to rape, with a female who is not the accused's wife and who has not attained the age of sixteen years. Lack of consent is not an element of this offense. MCM, 1984, Part IV, paras. 45b(2) and c(2).

from the degrading and embarrassing disclosure of intimate details about their private lives." The rationale, according to one commentator, "is to prevent the victim, rather than the defendant, from being put on trial." We hold that in relying on the spirit of Rule 412 the trial judge exercised discretion, and that nothing alleged in defense counsel's affidavit indicates that he abused his discretion.

*Id.* at 875–76 (footnotes omitted).

The Court of Military Appeals has taken a similarly broad view of Mil.R.Evid. 412. In reviewing a conviction for indecent assault and forcible sodomy, the court held that while a military judge cannot force a victim to undergo psychiatric evaluation, he is not without leverage to protect an accused from victims with "psychic complexes.". *United States v. Owen*, 24 M.J. 390, 395 (C.M.A. 1987), *cert. denied*, 484 U.S. 1026, 108 S.Ct. 750, 98 L.Ed.2d 763 (1988). The court, in fact, suggested three avenues of approach for the military judge, but the second is the only one pertinent here.

> Second, a well-prepared defense counsel can often develop sufficient information based upon cross-examination and extrinsic evidence to obtain the opinion of an expert psychiatrist. Mil.R.Evid. 702–706 certainly envision such testimony in the appropriate case. *Mil.R.Evid. 412 gives the military judge sufficient latitude to permit proof of the behavior giving rise to the expert testimony.*

*Id.* (emphasis added).[7]

### B. Analysis

▪ While Mil.R.Evid. 412 generally erects a shield against prying inquiries into an alleged victim's past sexual conduct, Mil. R.Evid. 412(b)(1) provides an exception for such evidence that may be "constitutionally required to be admitted." The analysis of the rule explains that this exception recognizes "the fundamental right of the defense under the Fifth Amendment ... to present relevant defense evidence...." Mil.R.Evid. 412 analysis.[8] The Court of Military Appeals provided the analytical framework for resolving admissibility issues under this rule by stating that an accused "has the right to present evidence which is relevant, material, and favorable to his defense." *United States v. Dorsey*, 16 M.J. 1, 5 (C.M.A.1983) (citing *United States v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982)).[9] The standard of review for a military judge's decision under this rule is whether he abused his discretion. *Williams*, 37 M.J. at 361. We hold that the military judge did not abuse his discretion in disallowing the evidence under Mil.R.Evid. 412.

The Supreme Court, testing for a constitutional violation in *Valenzuela–Bernal*, specifically disavowed the "conceivable benefit" test,[10] finding it to be a per se rule "which requires little if any showing ... that the testimony ... would have been either favorable or material." 458 U.S. at 866, 102 S.Ct. at 3446.[11] Rather, the evidence must be *"relevant* and *material,* and ... *vital* to the defense," and that materiality means "the suppressed evidence might have affected the outcome of the trial." *Id.* at 867, 868, 102 S.Ct. at 3446, 3447. Finally, the Court reiterated that the "omission must be evaluated

---

7. While not cited at this juncture in the opinion, the court did cite to the *Scuito* case elsewhere, evidencing its awareness of the rationale therein surrounding the use of Rule 412.

8. The analysis provides further that Rule 412 is not to be interpreted as a rule of absolute privilege, that great care must be taken in admitting any reputation or opinion evidence as "constitutionally required," and that "absent [some] peculiar circumstances" past sexual behavior is unlikely to be admissible. Mil.R.Evid. 412 analysis.

9. The court also looked to Mil.R.Evid. 412(c)(3) and its test of balancing probative value against unfair prejudice. *Dorsey*, 16 M.J. at 7. The court held in a later case, however, that it "did not consider itself bound to apply [this] balancing test." *United States v. Williams*, 37 M.J. 352, 360 n. 7 (C.M.A.1993).

10. The test is whether the defendant could conceivably benefit from the missing witness' testimony. *United States v. Valenzuela–Bernal*, 647 F.2d 72, 74 n. 1 (9th Cir.1981).

11. In his concurring opinion in *Williams*, Judge Gierke cautioned his brethren on the Court of Military Appeals to be careful not to adopt, by design or inadvertence, this lower standard of admissibility "expressly rejected by the Supreme Court." 37 M.J. at 361.

in the context of the entire record." *Id.* at 868, 102 S.Ct. at 3447 (citing *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976)).

 In the case now before us, the proffered evidence was marginally relevant [12] as it provided a possible reason for A giving sincere, but false, testimony identifying the appellant as one of her abusers. The evidence was also material [13] as A was the Government's central witness. However, we do not find the evidence to be "favorable to the defense" as that term is used in this test. To be so, "the Government's evidence [must be] far from overwhelming and such ... testimony [must be such that it] could shift the outcome in appellant's favor." *Williams*, 37 M.J. at 360.[14] The fact that the grandfather may have abused A does not preclude any possibility that she was abused by the appellant. A had consistently claimed that both men had abused her, rather than just the appellant; this undercuts a theory of substitution. Further, Dr. Peterson's testimony, especially in response to the clarifying questions from the military judge, was far from conclusive as to whether A was "normalizing" abuse by the grandfather when she accused the appellant. He thought it equally possible that she was reporting something that actually happened. This testimony would hardly have turned the tide in the appellant's favor.

### III. Expert Testimony

 Military Rule of Evidence 702 is taken verbatim from Federal Rules of Evidence 702 [hereinafter Fed.R.Evid.]. MCM, 1984, app. 22, Mil.R.Evid. 702 analysis, A22–45 [hereinafter Mil.R.Evid. 702 analysis]. Mil. R.Evid. 702 allows expert testimony if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue...." Deciding whether testimony will be helpful involves balancing the reliability of the scientific techniques, the relation of the scientific information to a disputed factual issue, and "the possibility that admitting the evidence would overwhelm, confuse, or mislead the jury." *United States v. Gipson*, 24 M.J. 246, 251 (C.M.A.1987). In making this balancing decision, "[t]he judge has considerable room to exercise 'judgment.' " *Id.* The Court of Military Appeal's scheme for evaluating expert testimony closely parallels the current analytical approach of the Supreme Court, announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *United States v. Williams*, 39 M.J. 555, 557 (A.C.M.R.1994).

 A guiding principle of the body of rules governing the admissibility of expert testimony is helpfulness: to be admissible, expert evidence must be helpful. *Zenith Radio Corp. v. Matsushita*, 505 F.Supp. 1313, 1330 (E.D.Pa.1980); Mil.R.Evid. 702 analysis. The notes of the advisory committee on Fed. R.Evid. 702 states that expert opinions are excluded when "unhelpful and therefore superfluous and a waste of time." Fed.R.Evid. 702 advisory committee's note (citing 7 Wigmore § 1918 (Chadbourn rev. 1978)). We hold that the military judge did not abuse his discretion or commit manifest error in refusing to admit the testimony of Dr. Peterson desired by the defense.

 Several opinions from the Ninth Circuit Court of Appeals provide additional insight into the admission of expert psychiatric testimony. In a drug possession case, where the appellant admitted the misconduct but offered psychiatric evidence that he was not predisposed to distribute drugs, the court upheld the trial judge's bar of the psychiatric evidence as confusing. The court said it was a matter best left to the discretion of the trial judge, and that his ruling that the testi-

---

12. Relevancy is the tendency of the proffered evidence to prove a fact asserted by the defense or, in other words, its tendency to make the existence of the fact more or less probable than it would be without the evidence. *Dorsey*, 16 M.J. at 5. Witness bias is relevant. *Williams*, 37 M.J. at 360.

13. For the evidence to be material, the fact intended to be proved thereby must be of consequence to the determination of the appellant's guilt. *Dorsey*, 16 M.J. at 6.

14. In *Dorsey*, the court found that the proffered evidence undermined the credibility of the prosecution witness and would have corroborated appellant's testimony. 16 M.J. at 7.

mony would not be helpful to the jury was not an abuse of discretion. *United States v. Benveniste*, 564 F.2d 335 (9th Cir.1977). In a case of willful failure to file tax returns, the appellant had unsuccessfully sought to introduce psychiatric evidence to show that he was not capable of forming the specific intent required. The court there stated that a defendant was not automatically entitled to present psychiatric testimony. While the trial judge has wide latitude in deciding the admissibility of such evidence, the appellate court would not overturn his decision unless manifestly erroneous. *United States v. Byers*, 730 F.2d 568 (9th Cir.1984). *See also United States v. Winters*, 729 F.2d 602 (9th Cir.1984) (not abuse of discretion to admit psychiatric testimony which will assist jury in understanding the evidence).

■ The Court of Military Appeals has relied on federal decisions in dealing with this rule. In one of its more recent cases, Judge Sullivan quoted extensively from an opinion of the Eighth Circuit Court of Appeals to the effect that a psychiatrist could properly aid the jury by generally testifying about a child's ability to separate truth from fantasy, by giving an opinion as to whether the medical evidence was consistent with a story of sex abuse, or by discussing patterns in stories told by sexually abused children. *United States v. Arruza*, 26 M.J. 234, 239 (C.M.A.1988) (Sullivan, J., concurring) (quoting *United States v. Azure*, 801 F.2d 336, 340 (8th Cir.1986)), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989). But it was wrong to allow a psychiatrist to put an expert's stamp of truthfulness (or the lack thereof) on the alleged victim's story. *Id.* This is the exact situation here, where the defense sought to have Dr. Peterson relate his expert opinion to A's report of abuse and, as an expert, reject it on a theory of normalization.

## IV. Confinement Credit

Appellate defense counsel also raised the question of what confinement credit has to be directed in a convening authority's action. The appellant, based on his having been in pretrial confinement from 17 October 1991 to 20 April 1992, was entitled to 187 days of confinement credit. *United States v. Allen*, 17 M.J. 126 (C.M.A.1984) [hereinafter *Allen* credit]. Based on a concession by the government, the military judge ruled that the appellant was also entitled to 121 days of confinement credit for pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813. *See* Rule for Courts–Martial 304(f) [hereinafter R.C.M.]; *United States v. Suzuki*, 14 M.J. 491 (C.M.A.1983). In his action, the convening authority directed that the appellant "will receive 187 days credit of pretrial confinement against the sentence to confinement."

■ As we pointed out in a recent opinion, *Allen* credit is not to be directed in a convening authority's action. *United States v. Rimmer*, 39 M.J. 1083, 1084, 1085 (A.C.M.R.1994); *see United States v. Dewald*, 39 M.J. 901 (A.C.M.R.1994); Message, HQ, Dep't of Army, DAJA–CL 1984/5130, 061000Z Feb 84, subject: Credit for Pretrial Confinement, U.S. v. Allen. Credit for pretrial punishment, because it does not come within the purview of R.C.M. 305 (as implemented by R.C.M. 1107(f)(4)(F)), would appear also to be exempt from recitation in the convening authority's action. *Rimmer*, 39 M.J. at 1084. We note that since we expressed our concern over the lack of firm guidance in this matter The Judge Advocate General has taken action to remedy this shortcoming for the Army. *See* Message, HQ, Dep't of Army, DAJA–CL, 221600Z Jun 94, subject: Sentence Credit. We will clarify the credit in this case through our decretal paragraph.

The remaining assertions of error, to include those raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty and the sentence are affirmed. The court directs that, in addition to the administrative credit given the appellant for his pretrial confinement, he be credited with 121 days against his sentence to confinement for having undergone unlawful pretrial punishment.

Senior Judge WERNER concurs.

HOSTLER, Judge (concurring in part and dissenting in part): *

I agree with the majority that the principles of Military Rule of Evidence 412 [hereinafter Mil.R.Evid.], in conjunction with Rules 702, 703, and 704, provide an apt framework for analysis concerning the admissibility of evidence regarding sexual abuse by the child victim's grandfather and expert witness testimony from the clinical psychologist who appeared during the appellant's court-martial. I disagree, however, with the conclusion of the majority regarding the admissibility of that evidence.

The purpose of Mil.R.Evid. 412 is to shield victims of sexual offenses from harassment and embarrassment where evidence regarding their past sexual behavior would be of little probative value and would have a great potential to distract the triers of fact.[1] *United States v. Ferguson*, 14 M.J. 840 (A.C.M.R. 1982). The rule provides an exception, however, for evidence that is "constitutionally required to be admitted." Mil.R.Evid. 412(b)(1).

In order to be "constitutionally required" within the meaning of the rule, evidence of an alleged victim's past sexual behavior must be "relevant, material and favorable to the defendant." *United States v. Williams*, 37 M.J. 352, 360 (C.M.A.1993); *United States v. Colon–Angueria*, 16 M.J. 20 (C.M.A.1983); *United States v. Dorsey*, 16 M.J. 1 (C.M.A. 1983). The majority opinion acknowledges the relevance[2] and materiality of the proffered evidence in this case, but finds the evidence not to be "favorable to the defense" as the term is used in the context of the "constitutionally required" test. For several reasons, I believe the proffered evidence to be "favorable to the defense."

If admitted, evidence regarding the child victim's sexual activity with her grandfather, taken together with proffered expert witness testimony[3], would have allowed the defense the opportunity to attempt to develop as a plausible alternative to the appellant's guilt, the proposition that the child victim had innocently but mistakenly, through a substitution process recognized by practicing professionals in the field of psychology, ascribed to the appellant sexually abusive acts perpetrated by another.[4]

* Judge Dorsey D. Hostler took final action in this case prior to his release from active duty.

1. I accept the majority view regarding the importance of protecting a child victim of sexual offenses from prying and innuendo. I note, however, that exclusion of evidence is not the only way to achieve an appropriate level of protection. Judges are not without authority to ensure appropriate deportment of counsel in the examination of child witnesses. Further, competent defense counsel are not unaware that they risk the wrath of judge and jury alike if they comport themselves in an unseemly manner in the course of examining a small child on the witness stand. In the present case, evidence of sexually abusive behavior by the victim's grandfather was available through, and the defense sought to adduce such evidence from, sources other than the child victim.

2. The majority opinion assesses the proffered evidence to be material but only marginally relevant. Since the evidence addresses not just a material issue, but the dispositive issue—the child victim's credibility—I believe the evidence to be unequivocally both relevant and material. The evidence provides noncumulative impeachment regarding the credibility of the victim's allegations. *See Williams*, 37 M.J. at 357.

3. In my view, the proffered expert witness testimony falls within the permissible scope of such evidence as outlined in *United States v. Tolppa*, 25 M.J. 352 at 354–355 (C.M.A.1987) and *United States v. Harrison*, 31 M.J. 330, 332 (C.M.A. 1990). The defense should have been permitted to present that evidence to the members with government counsel and the military judge diligent to ensure that the expert witness did not stray "so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility." *United States v. Samara*, 643 F.2d 701, 705 (10th Cir.), *cert. denied*, 454 U.S. 829, 102 S.Ct. 122, 70 L.Ed.2d 104 (1981).

4. The majority opinion points to the child victim's consistent claims of molestation by both the appellant and her grandfather as undercutting the theory of substitution. This proposition was not explored on the record. I note, however, that the expert witness who at one point in his testimony pronounced it "equally possible" that under certain circumstances reports by a sexually abused child could be accurate or innocently mistaken was, at the time of his testimony, familiar with the fact that the child victim in this case had made allegations against both. Indeed, he is one of those to whom the child victim repeated her accusations against both. Further, the marked similarity between details of abusive incidents, including acts and words, ascribed by the child victim to separate encounters with the appellant and with her grandfather tend, in my mind, to support a theory of substitution.

In addition, evidence regarding sexual abuse by another individual could have served to provide an explanation not involving the appellant's guilt for the precocious knowledge of sexual matters evident in the child victim. The defense was, by the rulings of the military judges regarding this evidence, precluded from placing this alternative explanation for the child's sexual precocity before the members.

I do not see the prosecution's evidence in this case as otherwise overwhelming. It consisted principally in testimony from the child victim corroborated by cumulative testimony of those to whom she related reports of her sexual abuse. There was no compelling physical evidence and no large aggregation of circumstantial evidence. The case against the appellant was, in essence, the damning accusation of a sympathetic victim cloaked in the presumptive innocence of tender years.

In light of these considerations, I believe it an incorrect application of law and logic to dismiss the proffered evidence as not "favorable to the defense". In my opinion, the proffered evidence satisfies the "constitutionally required" exception to Mil.R.Evid. 412. *Williams*, 37 M.J. at 360; *Dorsey*, 16 M.J. at 5.

I will not speculate as to whether the members at the appellant's court-martial would have accepted the theory the defense sought to present. *Ferguson,* 14 M.J. at 845. Certainly, I cannot say beyond a reasonable doubt that this evidence would not have changed the outcome of the appellant's court-martial. Accordingly, I am convinced that the appellant was entitled to present that theory, and that the members were entitled to have the benefit of such evidence as the defense could adduce in discharging their solemn obligation to determine whether the appellant's guilt was proven beyond a reasonable. *See generally United States v. Bahr,* 33 M.J. 228 (C.M.A.1991).

I would set aside the guilty findings as to the sexual offenses, and authorize a rehearing by the same or a different convening authority.[5]

---

5. I am not unmindful of the concern expressed by Judge Gierke in his concurring opinion in *Williams,* that military courts must beware not, by design or inadvertence, to come to adopt the "conceivable benefit" rule expressly rejected by the Supreme Court in *United States v. Valenzuela–Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). 37 M.J. at 361. I do not believe resolving the evidentiary question for the defense in this case would constitute a move in that direction. This case involved the relatively unique circumstance of a spontaneous report by a young child of separate sexual abuses by two individuals. The proffer of evidence regarding sexual abuse by the child's grandfather clearly was not based upon speculation. *Compare United States v. Welch,* 25 M.J. 23, 26 (C.M.A.1987). Under the circumstances of this case, I feel the witness shield provided by an evidentiary rule should yield to the accused soldier's right to present evidence favorable to this defense.